HIBERNIA BANK & TRUST COMPANY, COMPLAINANT, APPEL-
LEE, *v.* ALSTON BOYD, DEFENDANT, APPELLANT.

(*Nashville,* December Term, 1931.)

Opinion filed April 30, 1932.

MILES, WARING & WALKER, for complainant, appellee.

Z. N. ESTES, for defendant, appellant.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

This cause is before us by writs of *certiorari* to the Court of Appeals, issued on the petitions of both parties.

We shall state herein only so much of the case necessary to the consideration of the points discussed.

The defendant, Boyd, was the executive officer of Dixie Refining Company, incorporated, the debtor by note of the complainant, Hibernia Bank and Trust Company, in the principal sum of $190,824.97. Boyd bound himself personally as guarantor of the payment of this debt, and subsequently delivered to a trustee several items of personal property to be held as collateral to secure his obligation to the Hibernia Bank, as well as to secure his obligations to certain other named creditors. In 1929 this trust collateral was apportioned among the beneficiary creditors pursuant to a written document of agreement signed by all the interested parties. Under this agreement the Hibernia Bank received a promissory note signed by Boyd for $125,000, the payment of which was secured by a deed of trust on certain real estate; ninety-nine shares of stock of the Dixie Refining Company; and sixty-seven shares of stock of the Columbia Mortgage and Trust Company. The shares of stock of the Dixie Refining Company appear from the record to have been worthless. The value of the note for $125,000 and the sixty-seven shares of stock of the Columbia Mortgage and Trust Company do not appear.

The agreement under which the Hibernia Bank received these securities is in the form of a communication addressed to the trustee. It refers to the two agreements under which the trustee was holding the securities above listed, and others, and directs that the items specified be turned over to the Hibernia Bank. The agreement continues: ''Whereupon, we are informed that the Hibernia Bank and Trust Company will collect any amounts due them under the above mentioned agreements from such collateral so delivered to them.''

The present action was brought by the Hibernia Bank and Trust Company to collect the debt of the Dixie Refining Company, with interest, from Boyd, under his contract of guaranty. The answer filed by Boyd pleaded certain credits, the statute of limitations, and an accord and satisfaction, and demanded a jury to try the questions of fact involved. There was a jury trial on issues submitted, none of which were held to be determinative. The Chancellor's decree awarding complainant a recovery in the sum of $257,401, debt and interest, less credits, was affirmed by the Court of Appeals.

Defendant's plea of an accord and satisfaction, contained in his answer, recites the delivery to the Hibernia Bank and Trust Company of the securities hereinabove referred to, under its written agreement that it would "collect any amounts due them under the above mentioned agreements from such collateral so delivered to them," and concludes: "Wherefore, defendant charges that complainant has accepted the said collaterals set out above in full settlement of said note and hence the defendant pleads accord and satisfaction of the note."

Following the entry of the verdict of the jury on the issues of fact submitted, the record recites:

"The defendant in due time had presented to the Court for submission to the jury another issue of fact, to-wit:

"Did the Hibernia Bank accept the collateral turned over to them in January, 1929, by the Bank of Commerce & Trust Company as Trustee in full settlement of the note sued on in the original bill?

"The Court refused to submit this last issue of fact to the jury to which action of the Court the defendant then and there excepted. The evidence on this issue of fact was presented orally to the Court and was tried

without the intervention of a jury. The presentation of this evidence was made while the jury was in the box."

The evidence referred to in this quotation from the record consisted of testimony of Boyd and T. O. Vinton, president of the Bank of Commerce and Trust Company which served as trustee under the trust agreements, that when the written agreement was executed, the complainant bank agreed to "accept the securities in full settlement" of the debt of the Dixie Refining Company. It does not appear that complainant objected to this testimony, but the Chancellor, apparently of his own motion, refused to admit it in evidence, ruling that the written agreement "spoke for itself." The vice-president of the complainant bank testified that his bank did not intend to release Boyd or his principal.

The action of the Chancellor in withholding the tendered issue from the jury was sustained by the Court of Appeals, the opinion of that Court holding: "The Court was right in taking that question from the jury. The proper construction of a written agreement is always a question of law to be determined by the Court and never an issue of fact to be submitted to the jury." This action of the Court of Appeals is assigned as error, as well as the ruling of that Court that the Chancellor correctly excluded the testimony referred to.

These assignments of error are available to Boyd, notwithstanding his motion for a new trial was not considered on its merits by the Chancellor, because not filed within the time permitted by the rules of the chancery court. "A motion for a new trial is not necessary to review the action of the Chancellor upon evidence which does not bear on issues submitted to the jury. To that extent a jury case in chancery is reviewed *de novo* on

appeal." *Carpenter* v. *Wright,* 158 Tenn., 289, 300. Without a motion for a new trial, therefore, it is proper that we consider and determine whether the Chancellor rightfully disposed of the issue of accord and satisfaction, without the aid of a jury verdict on the issue tendered, the defendant having demanded a jury trial on all issues of fact.

The evidence excluded by the Chancellor tended to prove that the agreement pursuant to which the securities were delivered to the Hibernia Bank and Trust Company by the trustee was executed by the parties in consideration of the bank's agreement to accept them in full settlement of the obligation on which Boyd was bound as guarantor. If it be conceded that the written agreement for the delivery of the securities does not alone express this consideration, extraneous evidence of the fact is competent, under the established exception to the parol evidence rule. *Whitby* v. *Whitby,* 36 Tenn. (4 Sneed), 473; *Perry* v. *Central Southern Railroad Co.,* 45 Tenn. (5 Coldwell), 138; *Fort* v. *Orndoff,* 54 Tenn. (7 Heiskell), 167, 170-171; *Mowry* v. *Davenport,* 74 Tenn. (6 Lea), 80, 93; *White* v. *Blakemore,* 76 Tenn. (8 Lea), 49, 61; *Hill* v. *McLean,* 78 Tenn. (10 Lea), 107; *Caughron* v. *Stinespring,* 132 Tenn., 636, 644, 179 S. W., 152, L. R. A., 1916C, 403. "We think it clear that the consideration is not to be regarded, in construing the statute (of frauds), as part of the contract, but merely as inducement to it. And therefore no principle of law is violated by the admission of parol evidence of the consideration, whenever it becomes necessary to be shown." *Whitby* v. *Whitby, supra.*

This parol evidence, that it was the understanding of the parties to the execution of the written agreement,

that the securities delivered would be accepted by the bank in full settlement of the obligation of the Dixie Refining Company and Boyd, does not tend to contradict any affirmative provision of the written agreement; and therefore the ruling in *McGannon* v. *Farrell*, 141 Tenn., 631, 214 S. W., 432, is not here involved. The construction most favorable to the complainant which the language used would permit would be that it is silent with respect to any rights of the bank outside of and beyond the securities delivered to it. There is certainly no language affirmatively recognizing any right in the bank to pursue its debt beyond the "collateral" received. Evidence that it agreed to accept such collateral in full satisfaction of the original obligation is consistent with the full tenor of the written instrument, and such evidence would therefore be competent under the authorities and rule above cited.

The record recites: "The Court refused to permit Boyd to testify as to what he had in mind or as to what agreement and understanding he had with the bank before this collateral was delivered under this 1929 surrender of collaterals agreement. Then defendant's lawyer stated that he wanted to prove the surrounding circumstances under which the said agreement had been signed. The Court refused to permit the defendant Boyd to testify along that line, saying the agreement spoke for itself."

From this it appears that the excluded evidence was offered for the particular purpose of proving the intention of the parties in the execution of the agreement for the release of the collateral securities held in trust, the motive which induced it, and the object and purpose designed to be effected by it, in order that the court might

give effect to the agreement as the parties intended it. For this purpose the evidence offered by Boyd was competent. *Mills* v. *Faris*, 59 Tenn. (12 Heiskell), 451, 457; *Barker* v. *Freeland*, 91 Tenn., 112, 116; *Nunnelly* v. *Warner Iron Co.*, 94 Tenn., 282, 291-292; *Perkins Oil Co.* v. *Eberhart*, 107 Tenn., 409, 415; *Ivy* v. *Binswanger & Co.*, 141 Tenn., 568, 579-580.

██ The written undertaking of the Hibernia Bank and Trust Company "to collect any amounts due them under the above mentioned agreements from such collateral so delivered to them," would be rendered ambiguous by evidence that the written agreement containing it was executed, and the collateral delivered, pursuant to an understanding and agreement of the parties that the bank would look to such collateral alone for satisfaction of its debt. The ambiguity thus created would be a latent ambiguity, as that phrase is defined in our cases, and would necessarily be resolved and interpreted in the light of the relevant facts disclosed by the extraneous evidence, as well as the context of the instrument itself and the other "agreements" to which it refers. *Weatherhead* v. *Sewell*, 28 Tenn. (9 Humphrey), 271, 295-297; *Teague* v. *Sowder*, 121 Tenn., 132, 148, 114 S. W., 488.

We conclude therefore that the Chancellor was in error in excluding the parol evidence, whether to be considered by him alone, or by the jury, in giving to the agreement the interpretation and construction intended by the parties who executed it.

The extraneous facts to which Boyd and Vinton testified or offered to testify were denied by the officer of the Hibernia Bank and Trust Company who signed the agreement for it, and thus was created a controversy of fact for determination by a jury.

The issue tendered by defendant which the Chancellor refused to submit to the jury was: "Did the Hibernia Bank accept the collateral turned over to them in January, 1929, by the Bank of Commerce and Trust Company as Trustee in full settlement of the note sued on in the original bill?"

If this issue had been submitted to the jury, it would have been the duty of the Chancellor to instruct them that it was the contention of defendant that the proper interpretation of the written agreement under which the collateral securities were delivered to the bank, construed to effect the intention of the parties as evidenced by the parol evidence of the circumstances accompanying its execution, required a verdict in the affirmative. Thus the jury would have been required to answer, under the instructions of the Chancellor, a mixed question of law and fact.

It is a well established rule that the proper construction or interpretation of a written instrument, usually a question of law for judge or chancellor, may become a mixed question of law and fact to be submitted to a jury. We quote from the opinion of LURTON, J., in *Barker* v. *Freeland,* 91 Tenn., 112, 116:

"It is an indisputable proposition that when a contract is in writing, and its meaning is plain and unambiguous, that its interpretation is matter of law for the Court. But when the writing is not plain and unambiguous, and is such as requires the aid of parol evidence, either to identify the subject-matter or in order to ascertain the situation and surrounding circumstances, or the nature and quality of the subject-matter, and the parol evidence is conflicting, or such as admits of more than one conclusion, it is not error to submit the interpretation of the doubtful parts of the instrument, under proper in-

structions, to the jury. Thompson on Trials, Section 1081, and cases there cited.''

The authorities elsewhere uniformly support this holding of our Court. See: 23 Am. & Eng. Ency. Law (2 Ed.), 555-556; 6 Ruling Case Law 862 (Contracts, sec. 249); 13 Corpus Juris, 785-786 (Contracts, sec. 997); *Keyser* v. *Kemper,* — Md., —, 146 Atl., 275, 65 A. L. R., 641, and annotation beginning at page 648.

The Text of Ruling Case Law, above cited, states the general rule: ''It may be said, therefore, that where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but where its meaning is obscure, and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury, under proper instructions.''

The text of Corpus Juris, *supra,* is in accord: ''Where the terms of a contract are ambiguous and their meaning is to be determined from extrinsic evidence which is conflicting, a question is presented for the jury or, as it is often stated, a question of mixed law and fact arises where the construction of a written contract depends on extrinsic facts as to which there is a dispute. In such a case the facts may be found by a special verdict, and the court may then interpret the writing in the light of such finding. But according to the usual practice it is considered a proper case for a hypothetical charge in which the jury should be told what would be the true construction of the instrument on the different states of fact which might be found by them, and they are then bound to take the particular construction applicable to the state of fact which they find.''

It is the usual practice in this State to submit to a jury in an equity case mixed questions of law and fact,

with proper instructions from the chancellor on the law applicable to hypothetical statements of facts which the evidence tends to prove. *McElya* v. *Hill,* 105 Tenn., 319, and cases therein cited; *Crisman* v. *McMurray,* 107 Tenn., 469.

We are of opinion that the excluded evidence made an issue of fact, material to the proper construction of the written agreement pleaded in defendant's answer, and that the tendered issue was improperly withheld from the jury. The defendant is entitled to have this issue considered by a jury, for which a reversal and remand are necessary.

We are satisfied with the conclusion of the Court of Appeals on all other matters presented by assignments of error of both parties, for the reasons assigned in the opinion of that Court; and all assignments of error made here will be overruled except defendant's first assignment which we have herein discussed.

Decree will be entered here reversing the decrees of the Court of Appeals and of the Chancellor to the extent that they contain a money judgment against defendant; and the cause will be remanded to the Chancery Court for a jury trial on the issue tendered, and for any further proceedings not inconsistent with this opinion. Costs of the appeal and of this Court will be divided equally between the parties.