GENERAL AMERICAN LIFE INS. CO. *v.* ARMSTRONG *et al.*
SAME *v.* CALDWELL *et al.*

(*Jackson*, April Term, 1944.)

Opinion filed February 3, 1945.

SAM P. WALKER and JOHN D. MARTIN, JR., both of Memphis, for complainants.

TAYLOR, ADAMS & FREEMAN, of Trenton, for defendant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

These suits heard together were brought to recover double indemnity contracted for, in the event of death by accident, by two five thousand dollar policies of life insurance, issued by Missouri State Life Insurance Company and later assumed by General American Life Insurance Company under a re-insurance agreement, on the life of Robert P. Caldwell. The Chancellor decreed in favor of Mrs. Armstrong, but against Mrs. Caldwell, holding her concluded by the terms of her settlement of her claim under the natural death provision. The Court

of Appeals granted recoveries on both policies. This Court granted *certiorari.*

Liability for $5,000 under the natural death clause in both policies was admitted and discharged. The controversy relates to the liability only under the clause providing for payment of double the face amount of the policy, if death is accidental as defined by conditions set forth. It is conceded that the death was accidental. Denial of liability for double indemnity rests on alleged application of a condition effective upon a contingency excluding such liability provided for in the policies, which are identical, were standard and in a form which was passed upon with approval by State Insurance Commissioners.

The policies, quoting from the first pages, provide as follows:

"Missouri State Life Insurance Company agrees to pay five thousand dollars which is the face amount of this policy immediately upon receipt of due proof of the death of Robert P. Caldwell, the insured.

"Double Indemnity

"The Company will pay double the face amount of this policy in lieu of the death settlement above provided if death is accidental as defined in the conditions hereinafter stated.

"Total and Permanent Disability

"The Company will also pay to the insured a disability income of fifty dollars per month, which is ten dollars for each one thousand of face amount, and will waive the payment of further premiums if the insured becomes totally and permanently disabled before age sixty, subject to all the terms and conditions on the following pages."

. On the second page, under the caption "Disability and Double Indemnity," in successive paragraphs with sub-headings, the conditions are set forth in detail under which liability will and will not arise under the general undertakings set out on the first page, above quoted. Under the sub-head "Accidental Death Double Indemnity Benefit" various contingencies are set forth to which this liability is subject and in which events double liability will not be payable, this paragraph concluding with these words: "And provided further that if claim for any Total and Permanent Disability benefits shall be allowed, or if the policy be continued under any non-forfeiture option, this provision as to Double Indemnity shall be null and void."

The policies were issued in January, 1930. In 1935 Mr. Caldwell became disabled and made application for and was granted awards under the provision in both policies and was thereupon and thereafter paid on both policies the monthly sums of fifty dollars in accordance with the contracts. This was continued until his death in 1939. Also, the payments by him and the premiums applicable to his continued life insurance were waived. No further premiums were paid by him applicable to the double liability, nor did the waiver include these premiums.

It appears from stipulations and testimony which we do not find to be controverted, that when these policies were originally applied for and issued they were discussed with and their terms explained to both Mr. Caldwell and his wife, the named beneficiary, by the resident agent of the Company, a personal friend; and that, in 1935, when application was made for the total and permanent disability awards, this gentleman, no longer connected with the Company, was requested by Mr. and Mrs. Caldwell to assist them in presenting these applications,

which he did, and that at this time the attention of the insured was called to the particular condition herein involved, and it was emphasized that under this condition, if disability benefits should be granted, the double indemnity upon accidental death would not thereafter be in force. It further appears that when the disability benefits were granted the policies were sent to the Company by Mrs. Caldwell, the wife and beneficiary, and the following endorsements were made thereon:

"Pursuant to the terms of this policy and the application bearing date Nov. 6, 1935, for benefits under the 'Total and Permanent Disability Benefits' provision of this policy, the provision for 'Accidental Death Double Indemnity Benefits' is hereby cancelled as of February 12, 1936 and the premium is hereby reduced to $171.80 per annum. General American Life Insurance Co., E. J. Heiman, Registrar."

And after this endorsement had been placed thereon the policies were returned to Mr. Caldwell, on March 20, 1936, with this letter:

"These policies are being returned after having been endorsed showing that the accidental death double indemnity benefits were cancelled as of February 17, 1936, and the premium reduced to $171.80 a year. We hope this will be found entirely satisfactory."

■ But, aside from this proof of actual knowledge brought home to the insured of these specific provisions of the policies, it is, of course, the rule that, "in the absence of fraud or mistake, an insured cannot claim that he is not bound by the contract of insurance, or certain provisions thereof, because he has not read it, or is otherwise ignorant of, or unacquainted with its provisions." 32 C. J., p. 1092, citing many cases. Also, 13 C. J., p. 370; 17 C. J. S., Contracts, sec. 137; and see *McKay* v.

*Louisville, etc., R. Co.,* 133 Tenn. 590, 182 S. W. 874, 876, where it is said, "the plaintiff is undoubtedly bound in law, whether he read the contract or not," citing *Railroad Co.* v. *Stone & Haslett,* 112 Tenn. 348, 79 S. W. 1031, 105 Am. St. Rep. 955; *Louisville & N. Railroad Co.* v. *Smith,* 123 Tenn. 678, 134 S. W. 866. And, with special reference to insurance policies, see 32 C. J., pp. 1129, 1130, where it is said that the insured "is conclusively presumed to have knowledge of, and to have assented to, all the terms, conditions, limitations, provisions or recitals in the policy," citing cases.

We turn now to a consideration of the holding of the Court of Appeals, challenged by petitioner Insurance Company. That Court held the condition invoked by the Company against liability for payment of double indemnity, in the event that the insured shall have applied for and been awarded benefits for disability, void on two grounds thus summarized in the petition:

"1. The provision on page two of the policy is inconsistent with and repugnant to the provision on page one of the policy agreeing to pay double indemnity benefits in case of accidental death.

"2. Because the provision on page two of the policy undertaking to cancel and annul the double indemnity accidental death benefits, if disability benefits are received under the policy, violates subsection 4 of section 6180 of the Code of Tennessee."

The questions presented are of first impression. No case is cited, and we are referred to none, in which the validity of this standard condition clause has been challenged or considered. Indeed, the record presents a situation in the nature of things unusual. It will rarely occur that one receiving benefits for total and permanent. disability comes to his death from bodily injuries by

accidental means within the restrictions contained in policies of this class. Mr. Caldwell was killed when struck by a train while driving his car across railroad tracks.

As has been seen, the first and perhaps determinative proposition advanced by the Court of Appeals is that the condition resting on the contingency stated, appearing on the second page of the policy, is inconsistent with and repugnant to the obligation found on page one to pay double indemnity in the event of death by accidental means.

■ Insurance contracts are subject to much the same rules of enforcement and construction which apply to contracts generally. We quote from a learned English writer (Salmond's Law of Contracts, p. 29) this pertinent general statement:

■ "The terms or operative provisions of a contract are of two kinds, which may be distinguished as undertakings and conditions. Undertakings are terms which create obligations; they embody the agreement of the parties as to the obligations which each is to incur towards the other. The conditions, on the other hand, are the terms which embody the agreement of the parties as to the contingencies (if any) on which the contract itself, or any particular obligation created by it, is to depend. Every contract contains terms of the first kind, for without an undertaking and an obligation created thereby there could be no contract at all. Most contracts contain terms of the second kind also. The undertakings and obligations of a contract may, indeed, be absolute, but they are commonly subject to express or implied conditions on which their operation or continuing operation depends."

Attention is directed particularly to the concluding clause quoted; for we have before us, in the instant case, a

contract which, in its first part sets forth its "undertakings," in terms more or less "absolute," followed, on the second page, by conditions operative on recited "contingencies on which the contract itself, or [and] any partiular obligation created by it, is to depend." To which may be added, that, in the instant case, it is expressly provided in its first part that the obligation, absolute in its terms, is "subject to all the terms and conditions on the following pages," thus giving notice that such controlling conditions follow.

Many illustrations might be given of forms of contracts absolute in their statements of obligations or "undertakings," which, though embodying in this connection no express reference thereto, are followed by recitals of conditions which will, if operative upon given contingencies, render the obligation void. A bond, in common form, is an illustration. Repugnancy and inconsistency do not apply to this class of contracts upon conditions.

The Court takes judicial knowledge that the principal undertakings in insurance contracts, almost without exception, are subject to conditions of various kinds, which commonly follow on succeeding pages of the policies.

We do not understand that the Court of Appeals bases its holding on any finding that the condition expressed in the above quoted proviso on the second page is obscure, in its expression, calculated to mislead or deceive, but that having undertaken in plain and absolute terms on the first page to pay double indemnity in the event of death by accident, the proviso on the second page that this undertaking will be null and void if the insured shall be granted disability benefits, is repugnant and inconsistent and, therefore, void.

It is true that critical comment is directed to the position in which this condition appears, but this does

not appear to us to be well founded. As before stated, the provision that the obligation to pay double indemnity shall be null and void appears under the well displayed heading, "Disability and Double Indemnity," tying the two together, followed by paragraphs dealing with the conditions under which liability shall and shall not arise. A paragraph sub-headed "Accidental Death Double Indemnity Benefit" first sets out conditions under which such indemnity shall be payable, and then exceptions are enumerated, such as death from suicide, poisoning, "while engaged in military or naval service, in time of war, or from participation in Aviation or Submarine Operations," and then follows, "and provided further that if claim for any, Total and Permanent Disability benefits shall be allowed, . . . this provision as to Double Indemnity shall be null and void." This plainly stipulated nullifying provision applies alike to all of the foregoing exceptions, and we see no reason why, if valid as to the others, as has been repeatedly recognized, it is not equally valid as to this.

It is urged by petitioner that the rule which gives effect to a construction by the parties applies here, in view of what took place between the insured and beneficiary, on the one hand, and the Company and its agent on the other, heretofore stated, but this rule has application only to cases of ambiguity, and we find no ambiguity here, and do not understand the Court of Appeals to rest its holding on such a finding, but rather upon the proposition that the condition nullifies a promise absolutely made on the first page of the policy, and is, therefore, void for repugnancy. To this, with all due deference, we are unable to agree.

In the case of *Yarborough* v. *Atlantic Life Insurance Company, Inc.*, 4 Cir., 84 F. (2d) 319, recovery of double

indemnity was denied in an application of like principles of construction to those we have followed, and upon somewhat similar reasoning, although the condition excluding liability which was considered there, was expressed differently, and we think less clearly, than in the policy now before us.

The Court of Appeals was of opinion, also, that settlement of these policies, under which the Company contracted to pay ten thousand dollars in the event of the insured's death by accident, is in conflict with the provisions of subsection (4) of Code Section 6180.

This Code Section carries the black letter heading *Provisions and conditions prohibited in policies,* and prescribes that no policy of life insurance shall be issued if it contains any of the provisions which are set out in the subsections (1) (2) (3) and (4), which follow. Subsection (4) under subhead, "For settlement at less than value of policy," reads:

"A provision for any mode of settlement at maturity for less value than the amount insured by the policy, plus dividend additions, if any, less any indebtedness to the company on the policy and less any premium that may, by the terms of the policy be deducted, payments to be made in accordance with the terms of the policy."

Having reached the conclusion hereinbefore indicated that the policies before us did not obligate the Company to pay further and more than the natural life loss and the disability benefits stipulated for, if the insured became totally and permanently disabled, and it appearing that there has been no default in payment of these obligations, it follows that the prohibition of this statute against a settlement at less than the value of the policy is not involved and has not been violated.

Also, since our conclusion against liability applies to

both policies, it becomes unnecessary to consider questions dealt with in the opinion of the Court of Appeals, in the petition and on the briefs, relating to the rights of Mrs. Caldwell, as distinguished from those of Mrs. Armstrong, arising out of differences in the manner and form of their settlements with the Company of the loss claims for natural death.

The Court of Appeals is reversed and both suits dismissed.