TRAVELERS INS. CO. *v.* SIDES.

(*Jackson,* April Term, 1947.)

Opinion filed May 31, 1947.

Rehearing denied June 26, 1947.

Emmett W. Braden and Charles G. Morgan, both of Memphis, for plaintiff in error.

Sam P. Walker and Sam Taubenblatt, both of Memphis, for defendant in error.

Mr. Justice Prewitt, J., delivered the opinion of the Court.

The judgment of the circuit court was in favor of the plaintiff and was affirmed by the Court of Appeals. *Certiorari* has heretofore been granted and the case argued.

The question presented is whether the plaintiff is entitled to recover under the accidental death feature of the policy. In 1931 the Insurance Company issued a policy of life insurance of $5,000 to James Howard Sides which contained two riders—one providing for waiver of premiums and payment of a monthly income of $50 in case of permanent total disability, and the other providing for additional indemnity in the amount of $5,000 in case the insured met his death through accidental means.

The insured lost his mind and became totally disabled. His wife, the plaintiff herein, was appointed guardian, and the Insurance Company commenced to pay the bene-

fits to her. Finally, after many negotiations, the disability feature of the policy was settled for $3,000. The important part of this release and settlement agreement, dated July 11, 1942, is as follows:

"It is distinctly understood and agreed that The Travelers Insurance Company is hereby released from any further claims under said 'Provision for Waiver of Premiums and Payment of Monthly Income in Event of Permanent Total Disability,' just as if said policy had no such provision attached, it being understood that this release shall not effect any other provisions of said Policy. The intent and purpose of this release is that The Travelers Insurance Company, having paid Bessie K. Sides, Guardian of James Howard Sides, the sum of Three Thousand ($3000.00) Dollars for the elimination of the 'Provision for Waiver of Premiums and Payment of Monthly Income in Event of Permanent Total Disability,' relating to said policy, the said Bessie K. Sides, as Guardian of James Howard Sides, hereby waives any claim whatsoever, past, present or future, under said Disability Provision for herself as Guardian for James Howard Sides and for the said James Howard Sides, his beneficiaries, executors, administrators, and assigns, and for any other persons who might claim any right under said Disability Provision for or on behalf of said James Howard Sides."

It is the insistence of the plaintiff, which we think is supported by material evidence, that at the time this release agreement was executed there was a contemporaneous agreement between the guardian and the agent negotiating the settlement that the additional benefits, or double indemnity provisions of the policy, would remain in force.

The insured was accidentally killed on July 21, 1942, ten days after the settlement, by coming in contact with a highly charged electric wire, and thereupon claim was made, not only for the face of the policy, but for the additional indemnity in the sum of $5,000.

Referring back for the moment to the above set out part of the release agreement of July 11, 1942, attention is called to the following language: ". . . , it being understood that this release shall not effect any other provisions of said Policy."

The Insurance Company thereupon forwarded a check to the plaintiff, she being the beneficiary under the policy, for the amount of the life indemnity. A letter accompanied this check, which reads as follows:

"Memphis, Tenn.
"August 6, 1942

"Mr. Sam B. Taubenblatt, Attorney
"Exchange Building
"Memphis, Tennessee

"James Howard Sides
"Policy 116-NW-12359
"Death Claim

"Dear Mr. Taubenblatt:

"Attached is a draft payable to the beneficiary, Bessie K. Sides in the amount of $4,964.13. This amount was arrived at as follows:

"Amount of Policy ................ $5000.00
Unearned Loan Interest .......... .23

$5000.00
Cash Loan                         36.10 deducted
                                  Balance  4964.13

"In submitting the claimant's statement—proof of death, I notice thereon that you are claiming double in-

demnity. Under the additional indemnity provision of the policy held by the deceased it states in part:

" 'It is further agreed that the additional indemnity will be paid only in the event that the accident which shall cause such death shall occur before a default in the payment of any premium required under this contract or under the said life contract, *before any benefit* or value under any of the provisions in such life contract other than cash loan shall have been claimed and allowed and before the anniversary of such life contract nears the 70th anniversary of the birthday of the insured if the insurance extends such anniversary.'

"The permanent total disability provision of the contract is a part of the life contract. Therefore, benefits were claimed and allowed under the contract and the additional indemnity provision ceased as of that date. I trust that this is the information you desire because there was no additional indemnity provision in effect at the time of the deceased's death.

"Yours very truly,

"J. L. Burton

"Assistant Adjuster"

The Insurance Company insists that this check represented all liability against it under said policy.

It should be borne in mind that the insured was killed before any premiums were due or had been paid after the settlement was made. The plaintiff's testimony is that the only thing that was to be eliminated was the total and permanent disability provision; otherwise the contract was to remain the same.

On the face of the check, following the name of the payee, the amount, and the customary information, there appeared the following:

"Contract No. 116NW12359 Due ———— issued on the life of James Howard Sides.

Death Loss Payment

"The Travelers Insurance Company

"E. W. Frisbie Assistant Cashier."

On the reverse side there was this recitation:

"The amount of this Check is received in full settlement of the payment therein mentioned."

After holding the check for two months, the plaintiff endorsed and cashed it. The plaintiff testified that under an oral agreement had at the time the release was signed as to disability benefits it was the understanding that disability benefits only were settled.

The Insurance Company relies on the unreported case of *Viva Franklin Day Chilton* v. *Interstate Life & Accident Company*, Hamilton equity, opinion by Mr. Chief Justice GREEN filed November 30, 1934. However, in the opinion in that case the learned Chief Justice said:

"The complainant does not charge any fraud with reference to the execution of this paper on the part of the agent of the company that procured it. The particular agent who made this settlement with complainant is now dead. It is obvious, however, from the testimony of other officials of the company that the company intended to procure from the complainant just what this release purports to be, a full release of all her claim under this policy. There is therefore no basis for a charge of mutual mistake in respect to the contents of the release."

The difference between the release in the *Chilton Case* and the present one is manifest. In that case the check recited:

"In full settlement of all claims under policy No. L-16256 issued on the life of Ruby H. Day, dec'd."

There was no evidence, oral or written, restricting the scope of the language just quoted. In other words, the language of the check was full and unrestricted, while in the instant case it was restricted to the life feature of the policy. The intervening payments for total and permanent disability would have operated as a bar to liability under the double indemnity provision except for the oral agreement. This was so held in *General American Life Ins. Co.* v. *Armstrong*, 182 Tenn. 181, 185 S. W. (2d) 505. In that case there was no oral agreement, and hence the payments for total and permanent disability were held to preclude a recovery on the double indemnity provision.

Now, as to the oral agreement. It was held in *Hibernia Bank & Trust Co.* v. *Boyd*, 164 Tenn. 376, 48 S. W. (2d) 1084, that in the construction of a written contract evidence offered for the purpose of proving the intention of the parties in its execution, the motives which induced it, and the object and purpose designed to be effected by it, is competent.

We find in the instant case that the release expressly recites that it should not affect any other provisions of the policy, and we are unable to find any provision of the instrument that is contradicted or varied by the oral evidence. There is no language in the release expressing the intention that the double indemnity provision should not be incorporated in the policy when rewritten. Evidence that the Insurance Company agreed that such a provision should be incorporated was consistent with the tenor of the written release and, therefore, competent.

Sections 9741 and 9742 of Williams' Code provides that receipts, releases, and discharges in writing shall have effect according to the intention of the parties thereto.

■ We are of opinion, therefore, that there was material evidence in the record to sustain the contention of the plaintiff that it was not the intention of the parties in settling for the disability feature to remove the double indemnity provision.

It results that the decree of the Court of Appeals is affirmed.

GAILOR and TOMLINSON, JJ., concur.

CHAMBLISS, C. J., and NEIL, J., dissent.

DISSENTING OPINION.

MR. CHIEF JUSTICE CHAMBLISS delivered the following dissenting opinion.

With deference to the esteemed writers of the majority opinion in this Court and that of the Court of Appeals, I am unable to concur for the reason, among others, that, in my opinion, the admission of the oral testimony of Mrs. Sides, which is determinatively material in this case, violates in two particulars the universally recognized rule of evidence that contracts between parties, when reduced to writing, may not be contradicted, added to, or varied by alleged oral prior or contemporaneous agreements.

As well said by the Court of Appeals: ''Apart from the oral agreement, we think the intervening payments (which began in 1934) for total and permanent disability operated as a bar to liability under the double indemnity provisions. This *by the express terms of the policy. General American Life Ins. Co.* v. *Armstrong,* 182 Tenn. 181, 185 S. W. (2d) 505.'' (Italics mine.)

In other words, in 1942, when the lump settlement was made and the release agreement executed and since 1934,

when monthly payments began to be made for total and permanent disability, "by the express terms of the policy" sued on, it carried no provision for double indemnity in case of death by accident. Now in this situation an agreement was arrived at for a settlement of all disability benefits and a release by Mrs. Sides of all claims under that provision of the policy, for a lump payment consideration of $3,000. This agreement was reduced to writing by the attorney for Mrs. Sides, submitted to and approved by the probate court, Mrs. Sides being guardian for her mentally disabled husband. Now at this time the outstanding insurance policy contract not only carried no liability for double indemnity in case of death by accident, but, to the contrary, by its "express terms," as said by the Court of Appeals. Clearly, and, I assume, it would be conceded, if Sides had come to his death by accident at any time during the eight years preceding the making of the lump settlement, the Company would not have been liable for the double indemnity.

It follows that, if this liability now exists, it is by reason of an alteration or addition to the policy contract made at the time of this settlement and payment of $3,000 in 1942. This is what Mrs. Sides testifies was done by oral agreement. This is the testimony which seems to me to be inadmissible as varying, altering, contradicting, the written policy contract on which this action is brought. This plain provision of the policy, which she thus repudiates, is a standard condition based on obvious factors of risk incident to insuring one against accidental death, who is totally disabled, or past seventy years.

Again, not only does this oral testimony vary and contradict the written insurance policy contract, but it adds to and alters the written agreement and release prepared

by the attorney for Mrs. Sides and signed by her and approved by the probate judge, in which the payment of the $3,000 is the sole consideration for the release.

As bearing directly upon this precise situation, I quote from 20 Am. Jur., p. 972: "If the consideration is stated in the writing and is of a contractual nature, parol evidence is inadmissible to vary or contradict it, as where a conveyance expressly recites that it is made for the settlement and release of specified claims." A large number of cases are cited in support of this text and none contra. And see annotations in 12 A. L. R. 354, reviewing cases to the same effect. The following, which seem to me particularly applicable in the instant case, has been approved as a "precise and accurate statement of the rule." It is an excerpt from the opinion of Judge CAMPBELL in *Cocke* v. *Blackbourn*, 58 Miss. 537:

"Where parties embody their mutual agreements in a formal written instrument, it must be taken as containing all they then desired to preserve the evidence of; and that it is not competent afterwards, in a trial at law, to add to or subtract anything from it, by parol evidence of something which it should have contained or omitted." And see *Baum* v. *Lynn*, 72 Miss. 932, 18 So. 428, 431, 30 L. R. A. 441, wherein this quotation appears.

Of course, equity can entertain a bill to reform such an instrument upon proper allegations of fraud, but we have here no charge of fraud and this is an action at law. Here was a contractual instrument in writing which purported to set out the exact consideration for the release. Yet Mrs. Sides is permitted to testify that the Company's represenative orally agreed at the time this agreement was made and reduced to writing that, as an additional and exceedingly valuable consideration, the Company would thereafter recognize liability for double indemnity

in case of the accidental death of Sides. Moreover, when this written release agreement was presented to and approved by the probate judge, the record shows that that court, in its order of approval, recited as the consideration for the release of all disability benefits (1) $3,000 and (2) "that the life insurance in the sum of $5,000 is to remain in full force." Reference in the court's order to this life insurance was consistent with a recital in the written release that it "should not effect any other provision of said policy," since a provision of the policy at that time "in full force" called for payment of this $5,000. There is no suggestion that another and additional $5,000 would be paid in case of *accidental* death, no such provision then being in the policy. Quite apparently, neither the court, nor the lawyer representing Mrs. Sides, had in mind any such additional consideration.

The only authority cited by the Court of Appeals, or in the majority opinion, to sustain the admission of this testimony, is *Hibernia Bank, etc., v. Boyd,* 164 Tenn. 376, 48 S. W. (2d) 1084. Under the facts of that case, wherein the rule admitting parol evidence of contemporary inducements was applied, there was no conflict between the parol evidence and the language of the writing. There was no contractual writing purporting to set out the entire agreement. The securities involved had been turned over to the bank under a written authority to collect any amounts of indebtedness due the bank from this collateral. When sued for a sum in excess of the proceeds of the collateral realized by the bank, Boyd defended upon the ground that upon its acceptance of these securities the bank had waived any personal liability on his part. Not only was this contention not contradictory

of the writing, but it appears to have been entirely consistent with it, and the Court quite properly held that under such conditions his oral testimony to the above effect was admissible. We have no such state of facts before us in the instant case, in my opinion.

Other reasons occur to me why a recovery should not be had in this case, but I confine this written dissent to the foregoing statement of my views, which I am constrained to record because I conceive a fundamental principle to be violated by the admission of this oral evidence.

NEIL, J., concurs in this dissent.