**FILED**

**July 31, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

HARTSVILLE HOSPITAL, INC.     )
    )
        Plaintiff/Appellee,         )
    )       Appeal No.
v.                                )       01-A-01-9801-CH-00022
    )
THE BAY NATIONAL BANK     )       Trousdale Chancery
& TRUST CO.,                  )       No. 6092
    )
        Defendant/Appellant.     )


## COURT OF APPEALS OF TENNESSEE


## APPEAL FROM THE CHANCERY COURT FOR TROUSDALE COUNTY

## AT HARTSVILLE, TENNESSEE


## THE HONORABLE C.K. SMITH, CHANCELLOR


DAVID B. FOUTCH
GREGORY S. GILL
Rochelle, McCulloch & Aulds
109 Castle Heights Ave., No.
Lebanon, Tennessee 37087
        ATTORNEYS FOR THE PLAINTIFF/APPELLEE


SHARON LINVILLE
203 East Main Street
Hartsville, Tennessee 37074
        ATTORNEY FOR THE DEFENDANT/APPELLANT


## REVERSED AND REMANDED

# OPINION

This case is before us on appeal from a grant of summary judgment in favor of the Plaintiff, Hartsville Hospital Inc., regarding its claim to $27,835.81 held by the Defendant, The Bay National Bank & Trust Company. The parties shall hereinafter be referred to as Hospital and Bank respectively.

## I. Factual History:

The following facts are undisputed and are contained in the record on appeal now properly before this court. The Bank in this case is the Trustee in a Deed of Trust executed August 1, 1974. The Hospital is a successor in possessory interest to the original tenant. The Hospital, in an attempt to purchase the property from the Trustee, was seeking a release by the Trustee of all interests, secure and otherwise, which it had in the property which was the subject of the Lease, Indenture and Deed of Trust executed on August 1, 1974. The Bank was seeking the payment of a sum of money to at least recoup some of its losses in the original indenture. The original indenture instrument established a "Bond Fund" which is the subject of the instant dispute.

> Section 502. Creation of the Bond Fund. There is hereby created by the Issuer and ordered established with the Trustee a trust fund to be designated "the Health and Educational Facilities Board of the Town of Hartsville, Tennessee First Mortgage Hospital Revenue Bond Fund - Hartsville General Hospital Company Project" (which is sometimes referred to herein as the "Bond Fund", which shall be used to pay the principal of, premium if any, and interest on the Bonds.

In section 508 of the original indenture, the money in the "Bond Fund" was subjected to the mortgage lien and served as partial collateral for the payment of the mortgage.

> Section 508. Moneys to be Held in Trust. All moneys required to be deposited with or paid to the Trustee for account of the Bond Fund or the Construction Fund under

2

any provision of this Indenture shall be held by the Trustee in trust, and except for moneys deposited with or paid to the Trustee for the redemption of Bonds, notice of the redemption of which has been duly given, shall, while held by the Trustee constitute part of the Trust Estate and be subject to the lien hereof.

According to the documents now included in the record before this court, the Bond Fund was established as a repository for rents paid by the predecessors in interest to Hospital. In fact, at no time had Hartsville Hospital, Inc., paid any of the $27,835.81 that was in the Bond Fund account. Yet, Hartsville claims it is entitled to that money by way of the release executed by the parties between January 25, 1994 and February 1, 1994. That release reads, in pertinent part,

> The Trustee, on behalf of the holders of the Bonds, has now agreed to release its Security Interests and liens in the real and personal property securing the Bonds according to the terms agreed upon by the Trustee and Hartsville. In connection with the release of its Security Interests and liens, the Trustee has agreed to release and terminate its rights in all security for the repayment of the Bonds including, but not limited to, the Deed of Trust, the Assignment of Lease and the Security Interests. The Trustee shall have no further interest of any kind in any collateral securing repayment of the Bonds or any right to rent paid or accrued pursuant to the terms of the Lease.

> 1. Obligations of Parties. According to the terms of this Agreement, Hartsville agrees to deliver to the Trustee funds (referred to hereinafter as the "Funds") in the amount of Seventy-Five Thousand Dollars ($75,000). In consideration of the receipt of these funds, the Trustee, pursuant to the written direction furnished by a majority of bondholders will cancel any promissory note made by Hartsville or the Board (in principal Amount) [as corrected by Shirley Carrol, Trust Officer] for the benefit of the Trustee or holders of the Bonds and *release and terminate all liens, security interests and assignments in all assets granted in the Indenture or by other instrument to the Trustee by the Board or Hartsville to secure the repayment of the Bonds, including but not limited to the assets owned by the Board and leased to Hartsville under the terms of the Lease, and including but not limited to the termination and release of the Deed of Trust, the Assignment of Lease and the Security Interests.*
> . . .

> 9. Completeness and Modification. This Agreement

> constitutes the entire agreement between the parties hereto as to the transactions contemplated hereby and supersedes all *prior* discussions, understandings or agreements between the parties hereto. (italics supplied)

According to the affidavit of Alexander Buchanan, on or about February 3, 1994, R. Culver Schmid, counsel for the Hospital, contacted the Bank to inquire as to the worth of the Bond Fund. At that time Mr. Buchanan informed Mr Schmid that the Bond Fund balance was not affected by the release executed by the parties. In his affidavit in response to the motion for summary judgment below, Mr Buchanan averred,

> 3. The Bond Fund as established under the terms of the Indenture was not discussed until on or about February 3, 1994, the day prior to the closing of the transaction between Hartsville Hospital and Bay Bank. At that time, Mr. Schmid asked me about the balance in the Bond Fund. I told Mr. Schmid that I found it surprising that he was inquiring about such fund since no mention had been made of the fund at any time during the negotiations between the parties and that it was our intention that any monies in the Bond Fund would not be paid over to the Hospital. Mr. Schmid was informed that it was Bay Bank's position that such monies were not part of the transaction and Hartsville Hospital had no claim to such monies. Additionally Mr. Schmid was informed that unless Bay Bank received payment by Hartsville Hospital of the sum of Seventy Five Thousand ($75,000) dollars (without offset), there would be no release of Bay Bank's lien on the real property and the furniture, fixtures, and equipment used in the operation of the hospital. Finally Mr. Schmid was informed that if his client was willing to close upon those terms, the Seventy Five Thousand ($75,000) Dollars should be paid to Bay Bank and the Release Agreement signed, but that if those terms were not acceptable, the transaction should not be closed.

According to the Buchanan affidavit no other mention was made of the Bond Fund until after the closing. The Hospital demanded payment of the Bond Fund monies and filed suit. Both parties moved for summary judgment at trial. The court below refused to consider two affidavits, one of which is referenced above. The court apparently considered these affidavits to be parol evidence and thus barred from consideration. For reasons set out below, this court finds summary judgment inappropriate at this point in the proceedings.

**II. Issues for Review**

The appellant Bank presents the following issues for review:

1. Whether the Appellee had any right to receive monies held by the Appellant in the Bond Fund?
2. Whether the trial court erred in refusing to consider the affidavits of Shirley I. Carroll and Alexander B. Buchanan, offered to explain ambiguous terms of the Release Agreement as it applied (or, more accurately, does not apply) to the Bond Fund?
3. Whether the trial court erred in refusing to consider the Appellee is estopped from claiming an interest in the Bond Fund?

Since issue No. 2 is dispositive on appeal from summary judgment, it is not necessary to address the other issues. The Hospital argues, relying on the rule set out in *Faithful v. Gardener*, *799 S.W. 2d 232 (Tenn. Ct. App. 1990)*, that these affidavits represent prior or contemporaneous conversations presented for the purpose of varying or contradicting a clear and unambiguous writing.

If, however, the affidavits are offered to explain a latent ambiguity in the release agreement they are properly offered in evidence to counter a summary judgment motion. A latent ambiguity exists; " . . . where the equivocality or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer . . . " *Teague v. Souder,* 114 S.W.2d 484, 488 (Tenn. 1908).

The $27,835.81 balance in the bond fund at the time of the release represented money not paid by Hartsville but rather by predecessors in interest of Hartsville. When applying the language of the written release to the extraneous circumstances, the status of the remaining monies in the bond fund are not unambiguously "further interest" in collateral securing repayment of the bonds but may just as well be previous payments on the bonds. This is particularly true when one considers that admittedly none of these funds were ever paid into the bond fund by Hartsville.

Parol evidence is thus admissible to explain a latent ambiguity and the issue of the balance in the bond fund cannot be resolved on summary judgment motion.

Additionally, the affidavits present an oral exchange between the parties subsequent to the writing which warrants examination by the court. A movant is only entitled to summary judgment where, taking the view of the evidence most favorable to the non-movant, there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Evco Corp v. Ross, 528 S.W. 2D 20 (Tenn. 1975).* These affidavits present a factual question as to what the words of the release actually mean.

> It was held in *Hibernia Bank & Trust Co. v. Boyd*, 164 Tenn. 376, 48 S.W.2d 1084 (1932) that in the construction of a written contract evidence offered for the purpose of proving the intention of the parties in its execution, the motives which induced it, and the object and purpose designed to be effected by it, is competent.
>
> *Travelers Ins. Co. v. Sides, 184 Tenn. 663 at 669, 202 S.W.2d 815 (1947).*

Certainly these affidavits go to explain the terms of the agreements or at least their motives or intentions with regard to that agreement.

This Release concerned funds that had not been paid by the Hospital. Giving effect to this release without considering the affidavits in this case would allow a unique result in that the parties involved would be exchanging cash for cash.

In this case we have a release in which the bank releases all liens it holds on the encumbered property in exchange for a one-time payment of money. Funds held by the bank in the bond fund that had been paid in prior to Hartsville Hospital ever assuming duties and obligations as to the hospital is no where mentioned in the release agreement. No discussion occurred between the parties until after the signatures of both parties appear on the release agreement. The conversation referenced in the Buchanan affidavit occurred subsequent to the execution of the contract, but it is not barred by the parol evidence rule and should be considered along with all other evidence surrounding the meaning of the words in the release as same are applied to the circumstances surrounding the funds remaining in the bond fund.

There are still material issues of fact to be resolved in this case. The action of the trial court in granting summary judgment to Hartsville is reversed and the case is remanded for further proceedings. ***Byrd v. Hall***, 847 S.W.2d 208, 214 (Tenn. 1993).

Costs of the appeal are taxed against the appellee.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE

_____
BEN H. CANTRELL, JUDGE