# BARKER v. FREELAND.

## (*Nashville.* January 14, 1892.)

1. WRITTEN INSTRUMENTS. *Construction of, when by Court and when left to jury.*

It is a general rule that the Court must construe written instruments offered in evidence and declare their meaning to the jury. "But when the writing is not plain and unambiguous, and is such as requires the aid of parol evidence, either to identify the subject-matter or in order to ascertain the situation and surrounding circumstances, or the nature and quality of the subject-matter, and the parol evidence is conflicting, or such as admits of more than one conclusion, it is not error to submit the interpretation of the doubtful parts of the instrument, under proper instructions, to the jury." This case falls within the exception to the general rule.

Cases cited and approved: Mills v. Farris, 12 Heis., 462; Mumford v. Railroad, 2 Lea, 393.

2. SALES OF PERSONALTY. *When title passes to buyer.*

It is a general rule that "when by the agreement the vendor is to do any thing to the goods for the purpose of putting them in that state in which the purchaser is to be bound to accept them, or, as it is sometimes worded, into a deliverable state, the performance of those things shall, in the absence of circumstances indicating a contrary intention, be taken to be a condition precedent to the vesting of the property." This case affords sufficient "circumstances indicating a contrary intention" to support the jury's finding under a proper charge that title passed to the buyer before final delivery of the goods.

3. SAME. *Risk of injury to property.*

The general rule is that personal property, the subject-matter of sale, remains at the risk of the seller until the sale has been completed by delivery. But this is a mere presumption that may be rebutted by stipulation, or by "circumstances indicating a contrary intention."

Barker *v.* Freeland.

. There are, in this case, circumstances that justify the jury's finding, under a proper charge, that the goods should be at the buyer's risk before final delivery.

FROM GILES.

Appeal from the Chancery Court of Giles County. A. J. ABERNATHY, Ch.

JONES & EWING for Barker.

JOHN T. ALLEN, W. H. MCCALLUM, and J. P. ABERNATHY for Freeland.

LURTON, J. Complainant bought from defendants a crop of potatoes in a certain forty-acre field. He shipped them by rail from Pulaski to points in other States. Upon arrival at destination several car-loads were found to be worthless from decay. He alleges that they were not "good, merchantable stock" when delivered to him, and his damages to be the price he paid for them, plus freights expended.

Issues were submitted to a jury, who found for defendants, and the Chancellor, upon the findings, dismissed the original bill.

The contract of sale was in writing, and was

8—7 P

in these words: "We this day sell Jacob Barker forty acres of Early Rose potatoes, at sixty cents per barrel. He furnishes sacks, and we are to put them at the depot at Pulaski as soon as sacks come to us. And we agree to give him full measure and good, merchantable stock; and we will keep his men out with us that will attend to filling and sewing the sacks. We will load a car a day, weather permitting. Said Barker is to pay for each car as loaded."

The Court, in substance, instructed the jury that the defendants were, as matter of law arising upon construction of the written contract, bound to deliver "good, merchantable stock" at their field and into the sacks of complainant; but that the question as to whether they were obligated to deliver "good, merchantable stock" on the cars at Pulaski was for the jury to say, under all the facts and circumstances submitted to them in the evidence; that if they found "good, merchantable stock" had been delivered into the sacks of complainant, and that defendants had used due care in hauling them, when sacked, to the cars, that then defendants would not be liable for injuries consequent upon hauling them from the field to the cars, unless they should find that, under the contract, the potatoes were to be "good, merchantable stock" when put on the cars. We must regard the verdict as determining that these potatoes were up to the contract when put into complainant's sacks in the field, for the jury were plainly

instructed that defendants would be liable in case this were not so. The verdict must also be taken as settling the fact that defendants were guilty of no negligence in hauling them to Pulaski or in loading them on the cars. There was evidence tending to show that these potatoes were much injured by hauling them from the field where they were sacked to the cars at Pulaski, a distance of seven or eight miles, and that the subsequent decay was due to the injuries thus sustained. Complainant's contention was and is that the construction of the contract was exclusively for the Court; that under the written contract the title to the property did not pass to the buyer until delivery on the cars, and that the risk of delivery was on defendants. The Court was, in substance, requested to so instruct the jury, but these requests were refused.

From the evidence it appeared that these potatoes were undug at time of sale, and were in a field seven miles from the point where defendants were to put them on the cars; that they were the first crop of potatoes, and unusually long and large. There was also evidence tending to show that such potatoes were much more liable to be broken if transported in sacks than in barrels, and that decay was more likely to result from such breakage if in sacks such as those furnished by complainant than if hauled in barrels, which was the more common and safer method. There was evidence tending to show that complainant's atten-

tion was called to these facts, and that he elected to use sacks as the cheaper method of getting the crop to market.

It is an indisputable proposition that when a contract is in writing, and its meaning is plain and unambiguous, that its interpretation is matter of law for the Court. But when the writing is not plain and unambiguous, and is such as requires the aid of parol evidence, either to identify the subject-matter or in order to ascertain the situation and surrounding circumstances, or the nature and quality of the subject-matter, and the parol evidence is conflicting, or such as admits of more than one conclusion, it is not error to submit the interpretation of the doubtful parts of the instrument, under proper instructions, to the jury. Thompson on Trials, Section 1081, and cases there cited.

This proposition is clearly deducible from our own cases. *Mills* v. *Farris*, 12 Heis., 462; *Mumford* v. *Railroad*, 2 Lea, 393.

The learned counsel for complainant has urged very strenuously the fact that the written contract required defendants, after the potatoes were sacked, to put them on the cars at Pulaski. From this fact he insists upon two conclusions of law as necessarily following: (1) That the property did not pass to the buyer until the seller had put them on the cars; (2) that the risk of delivery on the cars remained with the seller.

Neither of these conclusions are the necessary consequence of an agreement by the seller to de-

liver, though they generally follow. Let us look at the first. The doctrine as to the vesting of the property in sales of personalty, as deduced from the decided cases, has been very carefully and precisely formulated in what are so well known as the rules of Lord Blackburn. His first rule is this: " When by the agreement the vendor is to do any thing to the goods for the purpose of putting them in that state in which the purchaser is to be bound to accept them, or, as it is sometimes worded, into a deliverable state, the performance of those things shall, *in the absence of circumstances indicating a contrary intention,* be taken to be a condition precedent to the vesting of the property." Admitting that the putting of the goods on the cars would ordinarily be treated as a thing which was a condition precedent to the vesting of the property, yet this case presented circumstances "*indicating a contrary intention*" which might fairly be left to the jury. These circumstances have already been sufficiently alluded to.

The second deduction is so inconclusive as to amount only to a presumption in the absence of circumstances indicating a contrary intention. The property may be in seller and the risk of delivery in the buyer. The presumption is that the risk and the property go together, but this presumption may be overthrown by agreement or by circumstances indicating a contrary intention. Ordinarily, if by the terms of a sale, the seller engages to deliver the thing sold at a particular place, the

price is not demandable until such delivery be made. But if the contract of sale is otherwise complete, and the circumstances indicate that the thing sold was to be in the meantime at the risk of the buyer, the latter would be bound to pay for it whether the property passed or not, if delivery was prevented without negligence of the seller. To this effect were the cases of *Castle* v. *Playford*, L. R., 5 Exc., 165, and 7 Exc., 98; and *Martineau* v. *Kitching*, L. R., 7 Q. B., 436; see also 1 Benj. on Sales, Secs. 374, 375, 377.

The circumstances of this case to be observed in this connection are these: The fact that complainant bought a crop in the field; that he was to have his own agent attend to the filling and sewing of the sacks; that he selected his own vehicles for containing the goods; and that at the field they were put into his own bags. These facts make a case where it might well be submitted to the jury as to the intention of the parties with respect to the risk of delivery on the cars, regardless of whether the title passed or not before such delivery.

The charge, while technically subject to some criticism, submitted substantially, and in a very clear and inartificial way, the question of intention as to the risk of delivery.

The decree must be affirmed.