IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 15, 2004 Session

# ROCKY GARNER v. PHIL BREEDEN and ASSOCIATES, ET AL.

Appeal from the Chancery Court for Davidson County
No. 99-1966-II     Carol McCoy, Chancellor

No. M2002-03103-COA-R3-CV - **Filed August 24, 2004**

Appellant sued Appellee for breach of contract or in the alternative for quantum meruit value of services rendered. At the conclusion of Plaintiff's proof the trial court sustained a motion for a directed verdict on behalf of Defendant as to the quantum meruit claim and further sustained that motion on a large portion of the contract claim. As to remaining portions of the contract claim the motion for a directed verdict was overruled, and Plaintiff voluntarily dismissed the remaining claims without prejudice. We hold that the trial court erred in granting the motion for a directed verdict as to the contract case but correctly granted a directed verdict as to quantum meruit. The judgment of the trial court is affirmed in part, reversed in part and remanded for trial on the contract issues.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Reversed in Part, and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

James D. R. Roberts and Janet L. Layman, Nashville, Tennessee, for the appellant, Rocky Garner.

John E. Quinn and Douglas B. Janney, III, Nashville, Tennessee, for the appellee, Phil Breeden and Associates, a sole proprietorship, and Phil Breeden, an individual.

## OPINION

Rocky Garner is an insurance adjuster and Phil Breeden owns a sole-proprietorship public insurance adjuster business known as Phil Breeden and Associates. In the summer of 1998, these parties made a contractual arrangement under which Garner was to perform services for Breeden in the preparation and submission of loss claims to insurance companies. His work was to be done on a percentage of commission basis which commission would be payable by the insurance company upon approval and payment of the claim with the entire insurance company commission check to

be paid to Phil Breeden and Associates. The first question to be answered in the case is exactly what the contract between the parties was.

Garner alleges in his complaint:

5. Mr. Garner has worked as an insurance adjuster for over fifteen years. He is a member of the American Society of Professional Estimators.

6. PBA is a public insurance adjuster. PBA, through its insurance adjuster employees, (1) locates entities which have sustained a loss covered by insurance coverage, (2) enters into contracts with such entities - - which are PBA's clients - - to assist those entities in securing the best payment possible from the insurance company regarding the client's covered losses, (3) negotiates the best payment possible from the insurance company regarding the client's covered losses, and (4) receives a commission from its clients which is paid from the payments PBA's clients receive from the insurance companies. PBA pays a commission to its insurance adjuster who works on the specific client matter.

7. PBA employed Mr. Garner as an insurance adjuster in the summer of 1998 via a verbal employment agreement (the "Employment Agreement").

8. The original compensation arrangement under the Employment Agreement was for PBA to pay Mr. Garner fifteen percent (15%) of the amounts received by PBA regarding the specific client matters on which Mr. Garner worked.

9. In November 1998, Mr. Breeden, on behalf of PBA, and Mr. Garner agreed that commencing in November 1998, PBA would pay Mr. Garner twenty-five [percent] (25%) of the amounts received by PBA regarding the specific client contracts on which Mr. Garner worked.

10. PBA terminated Mr. Garner on February 26, 1999, with commissions still owed to Mr. Garner by PBA regarding various matters. Mr. Breeden sent Mr. Garner a letter to effect that termination in which Mr. Breeden admitted that PBA owed commissions to Mr. Garner "based on the useful amount of work done on a client file and the degree of completion such work would represent." That letter also requested certain information which Mr. Garner provided to PBA soon after the request was made.

11. Notwithstanding repeated requests made by or on behalf of Mr. Garner that PBA pay Mr. Garner the commissions amounts owed to him, PBA has still not paid Mr. Garner the amounts owed to him under his Employment Agreement with PBA which Mr. Breeden has acknowledged and admitted are owed to Mr. Garner.

12. Even though PBA agreed to increase Mr. Garner's compensation effective November 1998 to twenty-five percent (25%) of amounts received by PBA from client matters on which Mr. Garner worked, PBA continuing to pay Mr. Garner only fifteen percent (15%) regarding certain client payments received by PBA between November 1998 and February 26, 1999.

13. In addition, PBA has not paid Mr. Garner anything at all for many client matters on which Mr. Garner performed the insurance adjuster work even though PBA has received payments from many such clients. Notwithstanding repeated attempts made by or on behalf of Mr. Garner, PBA has still not paid the commissions owed to Mr. Garner due to PBA's receipt of those payments.

The answer filed by Phil Breeden and Associates is essentially a complete denial of contract arrangements and an assertion that Garner was an employee at-will of Breeden and Associates. At the outset we must be cognizant of certain elementary rules of contract construction which are controlling in this case.

The supreme court has recently held:

If a contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. *See Hamblen County v. City of Morristown*, 656 S.W.2d 331, 335-36 (Tenn. 1983); *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355, 358 (1955). This determination of the intention of the parties is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). However, where the writing is not plain and unambiguous and is such as to require the aid of [parol] evidence and the [parol] evidence is conflicting or may lead to more than one conclusion, the doubtful parts may be submitted to the fact-finder for resolution. *Barker v. Freeland*, 91 Tenn. 112, 18 S.W. 60, 61 (1892); *Forde v. Fisk Univ.*, 661 S.W.2d 883, 886 (Tenn.Ct.App. 1983).

*Bratton v. Bratton*, 136 S.W. 3d, 595, 601-2 (Tenn. 2004).

The rules governing cases such as the present contract dispute were articulated by the supreme court in *Hibernia Bank & Trust Co. v. Boyd*, 48 S.W.2d 1084 (Tenn. 1932).

It is a well-established rule that the proper construction or interpretation of a written instrument, usually a question of law for judge or chancellor, may become a mixed question of law and fact to be submitted to a jury. We quote from the opinion of Lurton, J., in *Barker v. Freeland*, 91 Tenn. 112, 116, 18 S.W. 60, 61:

It is an indisputable proposition that when a contract is in writing, and its' meaning is plain and unambiguous, its interpretation is matter of law for the court; but when the writing is not plain and unambiguous, but is such as requires the aid of evidence, either to identify the subject-matter, or in order to ascertain the situation and surrounding circumstances, or the nature and quality of the subject-matter, and the evidence be conflicting, or such as admits of more

than one conclusion, it is not error to submit the interpretation of the doubtful parts of the instrument, under proper instructions, to the jury. Thomp. Trials, § 1081, and cases there cited.

The authorities elsewhere uniformly support this holding of our court. See 23 Am. & Eng. Ency. Law (2d Ed.) 555, 556; 6 Ruling Case Law, 862 (Contracts, § 249); 13 Corpus Juris, 785, 786 (Contracts, § 997); *Keyser v. Kemper*, 157 Md. 437, 146 A. 275, 65 A.L.R. 641, and annotation beginning at page 648.

The text of Ruling Case Law, above cited, states the general rule: "It may be said, therefore, that where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but where its meaning is obscure, and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury, under proper instructions."

The text of Corpus Juris, supra, is in accord: "Where the terms of a contract are ambiguous and their meaning is to be determined from extrinsic evidence which is conflicting, a question is presented for the jury or, as it is often stated, a question of mixed law and fact arises where the construction of a written contract depends on extrinsic facts as to which there is a dispute. In such a case the facts may be found by a special verdict, and the court may then interpret the writing in the light of such finding. But according to the usual practice it is considered a proper case for a hypothetical charge in which the jury should be told what would be the true construction of the instrument on the different states of fact which might be found by them, and they are then bound to take the particular construction applicable to the state of fact which they find."

It is the usual practice in this state to submit to a jury in an equity case mixed questions of law and fact, with proper instructions from the chancellor on the law applicable to hypothetical statements of facts which the evidence tends to prove. *McElya v. Hill*, 105 Tenn. 319, 59 S.W. 1025, and cases therein cited; *Crisman v. McMurray*, 107 Tenn. 469, 64 S.W. 711.

*Boyd*, 48 S.W.2d at 1086-1087.

It would defy rational imagination to say that the contractual arrangements between Garner and Breeden are clear and unambiguous. The written part of the contract filed as Exhibit 1 in the proof consists of hand written notes by Phil Breeden. About all that can be deciphered from this instrument without the assistance of parol evidence is that as of the date the document was written Garner was to receive a 15% share of the gross fees on certain active files of Breeden and Associates, those being James Barry, Charlene Jones, John Reeves, Dr. Spora, Patsy Stann, Stevens, and Acuff, with Garner's total fee on the Jones, Barry and Reeves adjustments totaling $8,505.

Whatever the details of the contractual arrangement turn out to be as a matter of fact, we are certain that Garner was more than an at-will employee of Breeden. Garner alleged in his complaint a contractual agreement with Mr. Breeden. When Mr. Breeden was called as the first witness for

-4-

Plaintiff he confirmed the contractual agreement and the basis upon which payment to Mr. Garner was to be made.

> Q.     Now, your attorney writes in this letter, "Mr. Breeden's position is that there is nothing owed to Mr. Garner until a claim is finally settled and then only to the extent that Mr. Garner added value to the claim."
> A.     Yes.
> Q.     Do you agree with that statement?
> A.     Yes.
> Q.     On May 22nd, 1999, did you believe that, that Mr. Garner was entitled to money only to the extent of the value of the claim that he filed?
> A.     Yes.
> Q.     Between March 22nd and May 20th, did you pay Mr. Garner any money at all on any claim whatsoever?
> A.     No.
> Q.     From May 20th, 1999 to this morning, have you ever paid Mr. Garner any money at all on any claim?
> A.     No.
> Q.     Have you ever sat down and reviewed all of those files, the 22 files, have you ever sat down and reviewed those files thoroughly to determine the work that Mr. Garner did for you?
> A.     Yes.
> Q.     When did you do that?
> A.     From February 18th, '99 through the present, many times, numerous times.
> Q.     Your testimony today is in all that, you never found one dollar's worth of work that Mr. Garner is entitled to?
> A.     No, that's not my testimony.
> Q.     I want to hear you tell me what your testimony is.
> A.     We attempted to - - in the dismissal meeting, it was my desire to have an open meeting with Mr. Garner, review the files, look at the documentation that was at his hand that he produced.
>
> Him and I agree on what it is, assign a prorata portion that it would be worth and when the file - - when the payment came in, pay him that proration - - pay him that agreed portion.

From this point on, the simple question was how much Breeden and Associates owed Mr. Garner for his work prior to his termination on February 18, 1999. The difficult factual part of the case involved the determination of exactly how Mr. Garner was to be paid for his work. By the Garner analysis he was to be paid the full percentage in all cases where his part of the work on the file had been completed. By the Breeden analysis he was to be paid on the basis of "him and I agree on what it is, assign a prorata portion that it would be worth and when the file - - when the payment came in, pay him that proration - - pay him that agreed portion." The trouble comes because "him and I" never could agree as to what Mr. Breeden owed Mr. Garner.

Since it is clear that the exact contractual arrangement is not disclosed by the documents, then it cannot be said that we are dealing with a contract that is plain and unambiguous thus making its interpretation a question of law for the court. We are faced in this case with questions of fact which must be resolved by the jury under the rule, as stated in *Boyd*. *See Hibernia Bank & Trust Co. v. Boyd*, 48 S.W.2d 1084, 1087 (Tenn. 1932). *See also, Bratton v. Bratton*, 136 S.W.3d 595, 601-2 (Tenn. 2004).

The trial court clearly recognized from the beginning that the ambiguous character of the exact contractual arrangements between the parties mandated that the contract case go to the jury under proper instructions.

At the close of Plaintiff's proof the trial court directed a verdict in favor of Defendant on the quantum meruit claim and also all "claims related to any of defendant's claim files upon which Plaintiff worked that were not completed at the time Plaintiff's employment with defendant ended." This order entered August 15, 2002 was later augmented by the final order of the court entered November 4, 2002 which reaffirmed the August 15, 2002 order. We find that the trial court correctly directed a verdict as to Plaintiff's quantum meruit claim but erred in directing a verdict as to any part of the contract claim.

A trial court considers and this appellate court reviews a motion for a directed verdict in accord with certain well settled rules:

> Those rules require that the trial judges and the appellate courts take the strongest legitimate view of the evidence in favor of the petitioner, allow all reasonable inferences in his favor, discard all countervailing evidence and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence. A verdict should be directed only where a reasonable mind could draw but one conclusion. *Holmes v. Wilson*, 551 S.W.2d 682 (Tenn. 1977).

*Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn. 1980).

The orders of the trial court offer no explanation for the grant of a directed verdict at the close of Plaintiff's proof in what is clearly a case of disputed material facts. Reference to the transcript discloses that the trial court acted for two separate reasons in granting the directed verdict as to almost all issues in the contract claim.

1.      On the basis that Mr. Garner in his in-court testimony directly contradicted his previous deposition testimony as to his expectation under the contract.

2.      That his proof of damages was speculative.

We disagree with the trial court in these findings.

In sustaining the motion for a directed verdict as to the major portion of the contract action the court stated:

> THE COURT: With regards to the Motion to Dismiss, the breach of contract claim, which is the only surviving cause of action, there's a very important matter that you need to address and that is your client's testimony.
>
> Your client testified in his deposition that he did not expect payment on claims not completed at the time of termination. That was his testimony under oath. An individual cannot come in and take an inconsistent position under oath because it nullifies that testimony and in the fact of that there is no breach proven.
>
> So, he is not entitled, if his testimony is to be believed that he expected payment on claims not completed at the time of his termination. His testimony on the witness stand has been different.
>
> How do you explain that and how do you survive the Motion to Dismiss?
>
> . . . .
>
> Your client has negated his own sworn testimony in his deposition by taking a position that he does expect payment on claims that were not completed at the time of termination and to that extent the motion for breach of contact is granted.
>
> That means that the only thing that survives are those claims that were completed at the time of termination.

The rule relied upon by the trial court is of long standing in Tennessee but is limited to cases in which the statements of the witness are directly contradictory and unexplained.

> It is a rule of law in this state that contradictory statements of a witness in connection with the same fact have the result of "cancelling each other out." *DeGrafenreid v. Nash. Ry. & Lt. Co.*, 162 Tenn. 558, 39 S.W.2d 274 (1931); *Johnson v. Cincinnati N. O. & T. P. Ry. Co.*, 146 Tenn. 135, 240 S.W. 429 (1922); *Donaho v. Large*, 25 Tenn. App. 433, 158 S.W.2d 447 (1941); *Southern Motors, Inc. v. Morton*, 25 Tenn. App. 204, 154 S.W.2d 801 (1941); *Nashville & American Trust Co. v. Aetna Cas. & Sur. Co.*, 21 Tenn. App. 366, 110 S.W.2d 1041 (1937).
>
> The question here is not one of the credibility of a witness or of the weight of evidence; but it is whether there is any evidence at all to prove the fact. If two witnesses contradict each other, there is proof on both sides, and it is for the jury to say where the truth lies; but if the proof of a fact lies wholly with one witness, and he both affirms and denies it, and there is no explanation, it cannot stand otherwise than unproven. For his testimony to prove it is no stronger

than his testimony to disprove it, and it would be mere caprice in a
jury upon such evidence to decide it either way.

*Johnson, supra*, 146 Tenn. at 158, 240 S.W. at 436. As can be seen from the quoted paragraph, this rule of "cancellation" is usually stated as applying only when the inconsistency in the witness's testimony is unexplained and when neither version of his testimony is corroborated by other evidence.

*Taylor v. Nashville Banner Pub. Co.*, 573 S.W.2d 476, 482-483 (Tenn.Ct.App. 1978).

Under this rule of "cancellation" the evidence must be considered in the light most favorable to Plaintiff and a verdict cannot be directed against him if reasonable minds might differ as to the question of an unequivocal and irreconcilable conflict. *Gambill v. Middle Tennessee Med. Ctr.*, 751 S.W.2d 145, 152 (Tenn.Ct.App. 1988).

The action of the trial court was based upon a single statement at the end of the extensive cross-examination of Mr. Garner:

> Q. You were not expecting payment on claims that were not finished when you were terminated, were you?
> A. I was expecting claims - - I was expecting commission payments on the work product that I had produced that were in those claims, yes. I expected to be paid for my services.
> Q. If I could have you take a look at Page 85 of your November, 2000 deposition, line 22. Question: "Were you expecting payment on claims that weren't finished" - - Answer - -
> A. "No."
> Q. Question: - - "when you were terminated?"
> A. "No, I wasn't."
> MR. QUINN: That's all my questions, Your Honor.

The last part of this statement cannot be considered in isolation of the first part when dealing with a motion for a directed verdict. Earlier in the in-court testimony of Mr. Garner he was cross-examined by use of other excerpts from his deposition.[1]

> Q. While you were working for Mr. Breeden, in order to get your percentage, your commission, whether it was 15 percent or 25 percent, you had to perform certain tasks, didn't you?
> A. Yes.
> Q. While you were working for Mr. Breeden, to get your percentage, to get your approved commission, 15 percent, 25 percent, you had to provide the

---

[1] The deposition is not in evidence but only excerpts thereof were read into the record.

estimate document, assess the damages, discuss those damages with the adjuster or insurance company representative, and agree on a settlement, didn't you?

A. Not on every case. It depended on the circumstances.

Q. Will you turn to page 87, please, line 16.

QUESTION: "But it was your understanding - - well, let me go back. Let me ask it in your words. Tell me your understanding as far as when you would be entitled and under what circumstances you would be entitled to your 15 percent or 25 percent. What did you have to do to get it?"

ANSWER: "I had to provide the estimate document, an assessment of the damages, discuss those damages with the adjuster or insurance company representative, and agree on a settlement. And upon the final agreement and the receipt of the check, then I would be paid my commissions."

Is that your testimony?

A. That's what it says here, yes.

As to Mr. Garner's in-court testimony and his previous deposition the record further shows:

Q. So is it your testimony that if you had done an estimate and Mr. Breeden fired you - - which he did; we're not disputing that - - if you had done an estimate, and someone else had to take over the file and finish it up, do the negotiations, settle the claim, in this lawsuit, you're claiming your percentage based on your estimate regardless of whether that was acceptable - - your estimate was acceptable to the insurance company or not? Isn't that the case?

A. No, sir.

Q. Could you turn to page 90, please, line 11.

QUESTION: "You have done an estimate, but then you get fired?"

ANSWER: "Uh-huh."

QUESTION: "Mr. Breeden or someone else has to take that file and finish it up?"

ANSWER: "Uh-huh."

QUESTION: "Are you claiming that you're entitled to your percentage, whatever it may have been, 15 or 25, based on your estimate amount?"

ANSWER: "I sure am."

QUESTION: "Regardless of whether that wasn't going to fly with the insurance company?"

ANSWER: "Yes, sir."

Is that your testimony?

It may well be that a jury may accept this singular statement by Mr. Garner out of the context of his other statements made in the same deposition and as trier of fact cast him on such a basis, but the very restricted scope of the "cancellation" rule cannot be applied to justify a directed verdict.

As to the question of whether or not the proof of damages offered by Mr. Garner is speculative within the meaning of the prohibition against the award of speculative damages it must

be observed that the record in this case causes one to wonder just what the jury is expected to do. The rule as to the award of speculative damages, however, is limited in its application.

> The courts will allow recovery even if it is impossible to prove the exact amount of damages from the breach of contract. Otherwise, in certain instances, the courts would be powerless to help some wronged parties. "Exact justice is not always attained, and the law does not require exactness of computation in suits that involve questions of damages growing out of contract or tort." *Provident Life and Accident Ins. Co. v. Globe Indemnity Co.*, 156 Tenn. 571, 576, 3 S.W.2d 1057 (1928). In *Coverdell v. Mid-South Farm Equipment Assoc., Inc.*, 335 F.2d 9 (6th Cir. 1964), the court applied Tennessee law to determine that an insurance company agent who was informed by trustees of the defendant corporation that he had been hired under a personal service contract to organize their group insurance, worked an entire weekend on the project, and cancelled an appointment in Texas was damaged when the trustees gave the contract to another agent. Uncertain and speculative damages are prohibited only when the existence of damage is uncertain, not when the amount is uncertain. When there is substantial evidence in the record and reasonable inferences may be drawn from that evidence mathematical certainty is not required. *Id.* at 14.

*Cummins v. Brodie*, 667 S.W.2d 759, 765 (Tenn.Ct.App. 1983); *see also Moore Constr. v. Clarksville Dep't of Electricity*, 707 S.W.2d 1, 15 (Tenn.Ct.App. 1985).

At present in this case only Plaintiff's proof is before the court, and based upon that proof the trier of fact could find a breach of contract by Breeden and Associates in failure to pay Mr. Garner in accordance therewith. When the case is fully tried the trier of fact may determine that Garner's work was worthless and that Breeden and Associates owe him nothing under the contract. The trier of fact may also find that his proof of damages is inadequate to justify a recovery. However, genuine issues of material fact as to all of these matters exist as the record now stands, and the trial court erred in directing a verdict on any of the contract issues.

Appellant's quantum meruit action is intriguing. The only reason this quasi-contractual remedy can exist in the company of the breach of contract action is because Defendant, in his answer to the complaint, denied the existence of a contract. If in fact a contract does not exist, quantum meruit would provide a viable alternative under which Garner might recover for the value of work performed. The problem with the claim's continued viability in this case is that Garner alleges a contract and testifies in support of the contract. Breeden was called as the first witness by Plaintiff and confirms the existence of a contract. The parties are in dispute as to the exact provisions of the contract and how the compensation of Mr. Garner was to be determined under the terms of the contract. With the testimony of Breeden being before the court as a part of Plaintiff's proof and his testimony confirming the existence of a contract it is difficult to imagine how quantum meruit continues to be viable.

Regardless of which version of the contract a trier of fact ultimately accepts, the existence of an agreement is uncontradicted following Breeden's testimony. Since a contract covering the entire question of the duties of Mr. Garner and the obligation of Mr. Breeden to pay him for those services in fact exists, there is thus no room for quantum meruit.

> Plaintiff next contends that the trial court erred in denying plaintiff real estate commissions on the two sales of the Roddy farm based on a theory of quantum meruit. The trial court determined that plaintiff was not entitled to recover under this theory because there was an express contract or agreement governing both of the sales in question and this court agrees.
>
> It is a general rule of law that an implied contract or quasi-contract will not be imposed in circumstances where an express contract or agreement exists. 66 Am.Jur.2d *Restitution and Implied Contracts* § 6 (1964). In connection with the first sale of the Roddy farm to The Dickerson Company, a written contract was entered into between Hayslope, Fletcher Realty and The Dickerson Company which expressly provided for a commission. As there was an express agreement for the payment of a commission on the first sale, there can be no claim for quantum meruit based up on the first sale. With respect to the second sale, the correspondence of April 3, 1984, and April 5, 1984, between Mrs. Roddy and Mr. Fletcher establishes that there was an express agreement between the parties that no commission would be paid to Fletcher by Hayslope on the sale to Smith and Schubert. Plaintiff's claim for a commission on the second sale based on the theory of quantum meruit is precluded by the express agreement between the parties that no commission would be paid.

*Fletcher Realty, Inc. v. Hayslope Properties*, 712 S.W.2d 478, 481-482 (Tenn.Ct.App. 1986); *see also Scandlyn v. McDill Columbus Corp.*, 895 S.W.2d 342, 349 (Tenn.Ct.App. 1994).

While at this stage of the case wherein only the proof of Plaintiff has been heard the denial by Defendant in his answer of the existence of a contract would leave the quantum meruit question viable in ordinary circumstances, the fact that Defendant has been called as a witness by Plaintiff and has admitted the existence of the contract negates his general denial in his answer as to the existence of a contract. All parties are thus in agreement that their entire relationship is covered by a contract. Their disagreement is as to exactly what their contract is, and this is the first question that must address itself to the trier of fact. The trial court was correct in directing a verdict on the quantum meruit claim.

Much of the briefs and arguments on appeal center around whether or not the grant by the trial court of Plaintiff's T.R.C.P. 41 motion for voluntary dismissal without prejudice of the case (couched in terms of a non-suit) was effective as to all contract claims. The record shows that after the trial court had announced that it was directing a verdict on the quantum meruit issue and also directing a verdict on all contract matters not fully completed at the time of his termination, the following exchange occurred:

THE COURT: I believe that what he said was he wasn't expecting payment on claims not completed. Now, you must ask your client what he meant by that.

I've already ruled that as to the breach of contract, he's not entitled to a cause of action for any claims not completed at the time of his termination.

The files have been submitted to the insurance company and payment was pending, he had every right to expect compensation. If he had work in progress - - it is 4:00.

Mr. Roberts, I hope you're going to listen to me very carefully. We're going to recess. We're going to take about 15 minutes. I want you to come back and tell me which cases payment was being expected upon these claims at the time of termination.

You should also be prepared to argue, in a coherent fashion, what you think the proof shows is the total amount of damages your client is requesting based on the proof that's in the record. (4:00 p.m., a recess was had until 4:18 p.m.)

MR. ROBERTS: Your Honor - -

THE COURT: Yes, sir.

MR. ROBERTS: - - I do not believe - - I do not believe that we can give you a number with reasonable certainty as to the claims that were completed and sent to the insurance company and to the extent we're awaiting payments. I do not believe I can give you a meaningful number of that tone.

Plaintiff would respectfully move this Court for a non-suit or, in the alternative, a motion for a new trial.

THE COURT: Has a non-suit been taken before?

MR. ROBERTS: Not that I'm aware of.

THE COURT: You're entitled to take a non-suit if that's what you're asking me. Is that what you're asking me?

MR. ROBERTS: Yes, Your Honor.

THE COURT: You'll be entitled to and I'll advise the jury of those circumstances. I would ask if you will just step out. I'm going to call the jury back in and talk to them for a few minutes, explain to them what's happened and we'll dismiss them and you can come back in and get your things. (Thereupon the jury was called back in outside the presence of the attorneys.)

THE COURT: Please be seated. Ladies and gentlemen, as you can see, none of the parties or their attorneys are present and that is due to the Plaintiff's request for a non-suit.

A Plaintiff has an unfettered right to ask that they be allowed to withdraw their suit at anytime. They can do that one time without prejudice, meaning that they can refile it and bring the lawsuit again.

They cannot do it a second time. Second time bars them from filing a lawsuit and is considered with prejudice. In this instance, this is the first non-suit so it is possible that this case might be refiled.

-12-

That means that this matter is concluded as far as you are concerned and as far as I am concerned, I hope. Now I'm going to excuse the court reporter for having faithfully done his duties. (4:20 p.m., a recess was had until 4:48 p.m.)

MR. QUINN: I have one matter if I might I'd like to make, it's an oral motion for costs.

THE COURT: Well, usually when there's a non-suit the costs are assessed against the Plaintiff and that's what is reflected in the Order but I don't think you can make a motion at this point.

Once a non-suit is announced, it's completed and so I think the Rules already speak to having taken a non-suit, the costs are assessed against the Plaintiff.

Thereafter each of the parties submitted a proposed order to reflect the action of the trial court.

On August 7, 2002, the trial court signed an order which was entered of record on August 6, 2002, providing: "This matter was before the court upon counsel's oral motion to non-suit the above matter pursuant to Tennessee Rule of Civil Procedure 41.01. The court finding that the plaintiff's motion is well taken hereby orders that the matter be dismissed without prejudice."

On August 9, 2002, the trial court signed an order which was entered of record on August 15, 2002, providing:

This case was tried in this Court before a jury on June 17-19, 2002. At the close of Plaintiff's proof at trial, the Court partially granted Defendant's Motion for Directed Verdict. Specifically, the Court dismissed Plaintiff's *quantum meruit* claims and all claims related to any of Defendant's claim files upon which Plaintiff worked that were not completed at the time Plaintiff's employment with Defendant ended. Following the dismissal of these claims, Plaintiff voluntarily dismissed his remaining claims pursuant to Tennessee Rule of Civil Procedure 41.01. Therefore, the Court finds that Plaintiff's claims that were not dismissed pursuant to Defendant's Motion for Directed Verdict are hereby dismissed without prejudice. Accordingly, it is hereby

ORDERED that Plaintiff's claims that were not dismissed pursuant to Defendant's Motion for Directed Verdict are hereby dismissed without prejudice.

Thereafter in post-trial proceedings the trial court executed a final order on November 4, 2002, which was entered of record on November 21, 2002, providing:

This matter came for hearing before the Honorable Carol McCoy, Chancellor Part II, on November 1, 2002 on (1) Defendants' Motion for Relief from Order of Nonsuit and (2) Amended Motion to Alter or Amend Order Granting discretionary Costs (filed by Plaintiff, Rocky Garner). After a review of Defendants' Motion for Relief from Order of Nonsuit, the supporting documentation attached to the motion, the Response to Defendants' Motion for Relief from Order of Non-Suit, the arguments of counsel for both parties during the hearing, and a review of the entire

-13-

record in this cause, the Court is of the opinion that the Motion is well taken and should be granted. It appears to the Court that Plaintiff tendered to the Court an Order of Non-Suit on August 7, 2002 to memorialize the oral nonsuit taken at the trial of this case. Plaintiff's tendered Order of Non-Suit was entered by the Court on August 16, 2002. It further appears to the Court that Defendants disagreed with the language contained in Plaintiff's August 7, 2002 Order of Non-Suit. Defendants tendered an alternative Order of Nonsuit to the Court (in response to Plaintiff's August 7, 2002 proposed Order) on August 9, 2002 which was also signed by the Court and entered on August 15, 2002. It is the opinion of the Court that the Order of Non-Suit submitted by Plaintiff and entered by the Court on August 16, 2002 should be set aside. It is the opinion of the Court that the Order of Nonsuit submitted by Defendants and entered by the Court on August 15, 2002 is the more appropriate Order for the Court to enter under the circumstances of this case. As a result, Defendants' Order of Nonsuit (entered on August 15, 2002) is the Order of Nonsuit in this case.

After a review of the Amended Motion to Alter or Amend Order Granting Discretionary Costs (filed by Plaintiff), the arguments of counsel for both parties during the motion hearing, and a review of the entire record in this cause, the Court is of the opinion that the Amended Motion is not well taken and should be denied. Accordingly, it is hereby

ORDERED that the Order of Non-Suit submitted by Plaintiff (entered by the Court on August 16, 2002) should be set aside and that Defendants' Order of Nonsuit (entered on August 15, 2002) is the Order of Nonsuit in this case. It is further ORDERED that the Amended Motion to Alter or Amend Order Granting Discretionary Costs filed by Plaintiff is denied.

This state of affairs would present interesting questions under T.R.C.P. 41 were it not for the fact that the action of this court in reversing the directed verdict as to any contract issue essentially renders the procedural problem moot. There is no question that the trial court had already ruled on the quantum meruit claim prior to the attempted voluntary dismissal and we have affirmed this action of the trial court. Our reversal of the directed verdict relative to the contract action sends the bulk of the breach contract claim back for a new trial. The voluntary dismissal without prejudice of remaining contract issues allows that part of the case to be refiled by Plaintiff so that the contract issues in their entirety may be tried upon remand. The order allowing discretionary costs to Defendant is reversed and the issue of discretionary costs will await trial of the contract case on its merits.

The judgment of the trial court is accordingly affirmed in part, reversed in part, and the case remanded to the trial court for the trial of the contract issues between the parties.

Costs of the cause are assessed to Appellee.

-14-

_____
WILLIAM B. CAIN, JUDGE