IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 13, 2011 Session

## AMERICAN BONDING COMPANY v. SANDRA VAUGHN

**Appeal from the Circuit Court for Williamson County**
**No. 2010CV112     Robbie T. Beal, Judge**

---

**No. M2010-02464-COA-R3-CV - Filed September 2, 2011**

---

This dispute involves a bail bond contract which the Appellant contends should be invalidated due to illegality, lack of mutual consent and because she allegedly executed the contract under duress.  The trial court found the contract to be enforceable and entered a $4,000.00 judgment against Appellant.  Appellee appeals the trial court's denial of its application for counsel fees as provided for in the contract.  We affirm in part, reverse in part, and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Larry R. McElhaney, II, Nashville, Tennessee, for the Appellant, Sandra Vaughn.

Geoffrey Coston, Franklin, Tennessee, for the Appellee, American Bonding Company.

**OPINION**

**I.  Facts and Procedural History**

On January 5, 2009, Kevin Vaughn, Sandra Vaughn's son, was arrested in Williamson County, Tennessee for driving under the influence, simple possession, and driving on a revoked/suspended license.  Following his arrest, Mr. Vaughn called the American Bonding Company ("American Bonding") to provide bonding services for him.  Amir Karshenas, owner of American Bonding, posted bond for Mr. Vaughn and subsequently transported Mr. Vaughn to his mother's home in Maury County.  Mr. Vaughn, Mr. Karshenas, and Kali Nolen, Mr. Karshenas' assistant, arrived at Ms. Vaughn's home between 10:00 p.m. and

midnight on January 5, 2009. Upon their arrival, Mr. Vaughn asked his mother to sign American Bonding's bond agreement as a "co-principal." Ms. Vaughn signed the document and provided a signed check, which Ms. Nolen filled out, to pay Mr. Vaughn's bond premium of $437.00. The Application for Bond stated, *inter alia*:

> The Principal(s), jointly and severally, shall at all times indemnify and save the company harmless from and against any and all claims, demands, liabilities, costs, charges, legal fees, disbursements, and expenses of every kind and nature, which the company shall at any time sustain or incur, as well as from all orders, decrees, judgments, and adjudications involving the company by reason or in consequence of having executed the bond(s) or undertaking(s) described in the application.

Mr. Karshenas left a copy of the agreement with Ms. Vaughn for her records. On January 15, 2009, Mr. Vaughn forfeited his bond when he failed to appear for his third court date. A Final Judgment relative to the bond forfeiture was entered in the amount of $4,000.00 against American Bonding as Mr. Vaughn's surety.

American Bonding filed an action to enforce the Application for Bond in the General Sessions Court of Williamson County against Ms. Vaughn. The court rendered a judgment in favor of American Bonding, and Ms. Vaughn appealed to the Williamson County Circuit Court. On the day the matter was set to be heard, Ms. Vaughn filed a Motion to Dismiss for Improper Venue, or in the Alternative, Sworn Denial and Counter-Claim alleging that American Bonding was "guilty of intentional and negligent misrepresentation, fraud, and violations of the Tennessee Consumer Protection Act." She further stated that she was "awakened in the middle of the night while on serious medications with side effects and tricked into signing the bonding agreement."

The trial court denied Ms. Vaughn's motion to dismiss and proceeded to the trial of the case, at which Ms. Vaughn and Mr. Karshenas testified. In its oral ruling, the trial court expressed displeasure with the business practices of Plaintiff, stating as follows:

> The Court's not pleased with the way the bond was made. I don't know when it became a policy of the bonding companies around here to remove a prisoner of the Sheriff's department in the hopes and the prayers of convincing somebody to pay the fee. The manner in which this was done is even more aggravating to the Court.
>
> The Court does accept Ms. Vaughn's statement that she doesn't pick up the phone for a reason. And then to have her son show up at the door - - at the

door of her home at 12:00 at night is inappropriate, perhaps illegal, to be completely honest. But certainly inappropriate. I would certainly consider that to be a startling event for Ms. Vaughn.

On top of that, nowhere in the paperwork does it say ultimately what the bond amount was. I mean, I don't mind the standard bond contract being used. But at some point - - at some point, the person receiving the contract, signing off on it as the co-principal should at least know how much the bond is they're signing off to indemnify for. And that wasn't done. . . .

The court ultimately upheld the contract stating that it did not "accept the duress argument by Ms. Vaughn" and further that "[t]here's no direct evidence here that would cause the court to believe that she was basically incompetent based upon her medication . . . ."

On October 22, 2010 the trial court entered a Final Order holding that Ms. Vaughn was not acting under duress and was not incompetent when she signed the contract. The court entered a judgment of $4,000.00 against Ms. Vaughn. The court did not award attorney's fees because "Amir Karshenas engaged in a sloppy procedure for the making of the contract."

Ms. Vaughn appeals and raises the following issues:

I.   Whether venue is appropriate in Williamson County?
II.  Whether the trial court erred in finding the contract between Ms. Vaughn and American Bonding Company was valid when there was "no meeting of the minds between he parties in mutual assent to the same terms"?
III. Whether the trial court erred in finding a valid contract where Ms. Vaughn signed the document under duress?
IV.  Alternatively, if there is an enforceable contract, whether American Bonding Company is entitled only to the $437.00 already paid?
V.   Does the public policy of Tennessee prohibit the enforcement of contracts such as these under these circumstances?

In addition, American Bonding raises an issue:

I.   Whether the trial court erred in denying American Bonding Company's attorney's fees when those fees were provided for in the contract?

## II. Standard of Review

In a civil case heard without a jury, we review the trial court's findings of fact *de novo* upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Questions of law are subject to *de novo* review with no presumption of correctness. *Graham v. Caples*, 325 S.W.3d 578, 581 (Tenn. 2010). The construction of a statute and its application to the facts are questions of law which we review *de novo* without a presumption of correctness. *Gautreaux v. Internal Med. Educ. Found., Inc.*, 336 S.W.3d 526, 531 (Tenn. 2011).

## III. Discussion

### A. Venue

Ms. Vaughn first argues that the trial court erred when it refused to dismiss the case for improper venue. American Bonding argues that venue was appropriate in Williamson County because it posted Mr. Vaughn's appearance bond in Williamson County and paid the bond forfeiture in Williamson County. In the Final Order, the trial court stated the following with regard to Ms. Vaughn's motion to dismiss for improper venue:

> Defendant made a preliminary Motion to Dismiss for improper venue. The Court finds that the contract was performed in Williamson County, therefore venue is appropriate. Additionally, the Court finds that Williamson County is a convenient forum, and Defendant will suffer no prejudice from the adjudication of this matter in Williamson County. Therefore, this motion is denied.

Venue "is generally not a condition precedent to the court's power, but relates instead to the appropriateness of the location of the action." *Meighan v. U.S. Sprint Commc'n. Co.*, 924 S.W.2d 632, 639 (Tenn. 1996). For purposes of determining venue, a cause of action must first be categorized as local or transitory in nature. *See TPC Facility Delivery Group, LLC v. Lindsey*, No. M2002-01909-COA-R3-CV, 2004 WL 193051, at *2 n.1 (Tenn. Ct. App. Jan. 30, 2004). Transitory actions are those that could have arisen anywhere, thus, an action based on contract is a transitory action. *See Curtis v. Garrison*, 364 S.W.2d 933 (Tenn. 1963); *Nickell, Inc. v. Psillas*, No. M2004-02975-COA-R3-CV, 2006 WL 1865018, at *2 n.3 (Tenn. Ct. App. 2006) (citing *Five Star Express, Inc. v. Davis*, 866 S.W.2d 944, 945 n.1 (Tenn. Ct. App. 1993)). Venue for an action based on a contract is governed by Tenn. Code Ann. § 20-4-101:

In all civil actions of transitory nature, unless venue is otherwise expressly provided for, the action may be brought in the county where the cause of action arose or in the county where the defendant resides or is found.

Tenn. Code Ann. § 20-4-101(a) (2010).

The contract that is the subject of this action did not address venue, and American Bonding did not bring the action in the county where Ms. Vaughn resides; therefore, we focus our inquiry on "where the cause of action arose" pursuant Tenn. Code Ann. § 20-4-101.[1] The contract between Ms. Vaughn, Mr. Vaughn, and American Bonding required Mr. Vaughn to "remain within the jurisdiction of the court until the case is finally determined and the company relieved" and to "timely attend all court sessions as ordered by the Court and maintain reasonable contact with the company to advise the company of all court proceedings." American Bonding's cause of action arose when Mr. Vaughn forfeited his bond by failing to appear in Williamson County for his third court appearance.[2] Therefore, the trial court did not err in finding venue in Williamson County was an appropriate venue for trial.

### B.     Contract Formation

#### i.     Illegality

Ms. Vaughn contends that the contract between herself and American Bonding is illegal and thus invalid. In support of her contention, she cites the trial court's statement that the contract was "perhaps illegal" and she recites the general legal principle that illegal contracts are not enforceable; however she fails to cite any authority, statutory or otherwise, to further support her argument. While we agree with the trial court that the circumstances and manner under which American Bonding secured the contract were troubling, we find no legal support for Ms. Vaughn's contention that the contract was illegal. Furthermore, we have independently reviewed Tenn. Code Ann. § 40-11-101, *et seq.*, the section of our code

---

[1] The agreement Ms. Vaughn signed indicated that American Bonding's "principal office" was in Nashville, TN.

[2] The contract provided that American Bonding could pursue Ms. Vaughn for payment of the bond forfeiture:

The company may enforce its rights against any one or all of the Principal(s) as the company, in its sole discretion, shall determine. The company shall not be required to proceed first against any particular Principal(s) before being able to proceed against any other Principal(s).

governing bail bondsmen, and have not discerned any statutory basis upon which to conclude the contract was illegal.

### ii.    Mutual Assent

Ms. Vaughn asserts that the contract is invalid because the total amount of the bond—$4,000.00—was not specifically listed on the contract she signed and, as a consequence "the parties did not have a meeting of the minds in mutual assent to the same terms." Considering the entire record, the evidence does not preponderate against the trial court's finding of mutual assent to the terms of the contract.

A contract must "result from a meeting of the minds of the parties in mutual assent to the terms" and must "be of sufficient explicitness so that a court can perceive what are the respective obligations of the parties." *Doe v. HCA Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001) (citing *Higgins v. Oil, Chem., and Atomic Workers Int'l Union, Local # 3-677*, 811 S.W.2d 875, 879 (Tenn. 1991) (quoting *Johnson v. Central Nat'l Ins. Co. Of Omaha*, 356 S.W.2d 277, 281 (Tenn. 1962)); *Jamestowne On Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 565 (Tenn. Ct. App. 1990)). "Indefiniteness regarding an essential element of a contract 'may prevent the creation of an enforceable contract.'" *Id.* (citing *Jamestowne On Signal, Inc.*, 807 S.W.2d at 565 (citation omitted). However, when addressing the requirement of definite contractual terms, our Supreme Court has previously stated, "'[c]ertainty with respect to promises does not have to be apparent from the promise itself, so long as the promise contains a reference to some document, transaction or other extrinsic facts from which its meaning may be made clear.'" *Id.* (citing 1 Richard A. Lord, *Williston on Contracts*, § 4:27, at 593 (4th ed. 1990).

Ms. Vaughn signed the Agreement, which stated that, as a co-principal, she would:

> indemnify and save the company harmless from and against any and all claims, demands, liabilities, costs, charges, legal fees, disbursements, and expenses of every kind and nature, which the company shall at any time sustain or incur, as well as from all orders, decrees, judgments, and adjudications involving the company by reason or in consequence of having executed the bond(s) or undertaking(s) described in the application.

Mr. Karshenas testified that he showed Ms. Vaughn the Booking Report which listed Mr. Vaughn's total bond amount of $4,000.00; however, Ms. Vaughn testified that she did not understand that she would be potentially liable for $4,000.00. The trial court resolved the conflicting testimony in favor of Mr. Karshenas, and we give this determination great deference. *See Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783–84 (Tenn. 1999) (noting

that trial courts see and hear the witnesses as they testify and are in the best position to assess a witness' demeanor and to make determinations of credibility*)*.  The trial court further noted:

> The law in the case is that when this lady writes down that she's the co-principal and is going to indemnify the loss of a bonding company, it's her responsibility to know what that loss is.  I mean, she's the signatory.  The bonding company ultimately fulfilled their obligation to remove the man from -- remove the man from custody.

The law is well-settled that, in the absence of fraud or mistake, a signatory to a contract is forbidden from claiming that she is not bound by the contract because "she has not read it, or is otherwise ignorant of, or unacquainted with its provisions." *General Am. Life Ins. Co. v. Armstrong,* 185 S.W.2d 505, 506–07 (Tenn. 1945); *see also Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 274 (Tenn. 2001).  In addition to the evidence showing that Ms. Vaughn assented to the terms of the contract, there was no proof of fraud or mistake in the execution of the contract.  We agree with the trial court's holding that Ms. Vaughn was bound by the terms and conditions of the contract.

### C.    Duress

Ms. Vaughn argues that the contract is voidable because she signed the contract under duress.  When addressing Ms. Vaughn's claims, the trial court stated, "I don't accept the duress argument by Ms. Vaughn.  I don't believe her free will was completely taken away . . . ."

This Court has previously defined duress as follows:

> "Duress" is an unlawful restraint, intimidation or compulsion of another to such an extent and degree as to induce such other person to do or perform some act which he is not legally bound to do, contrary to his will and inclination.  The alleged coercive event must be of such severity, either threatened, impending or actually inflicted, so as to overcome the mind and will of a person of ordinary firmness.  To constitute duress, the danger must not only exist, but must be shown to have actually operated upon the mind, and to have constituted the controlling motive for the performance of the act sought to be avoided.

*Cummings Inc. v. Dorgan*, 320 S.W.3d 316, 331–32 (Tenn. Ct. App. 2009) (citing *Hardy v. Harris*, No. 01-A-01-9001-CH-00005, 1990 WL 61429, at *1–2 (Tenn. Ct. App. Sept. 23, 2009)).  The contracting parties' ability to rely upon the defense of duress may be waived if

a party fails to promptly seek avoidance of the contract. *See Crocker v. Schneider*, 683 S.W.2d 335 (Tenn. Ct. App. 1984) (finding that a party who chose to perform under a written agreement for nearly two years was estopped from claiming economic duress to avoid the agreement).

When testifying regarding her belief that she signed the contract under duress, Ms. Vaughn stated as follows during cross-examination:

Q: And did [Mr. Karshenas] hold a gun to your head?

A: No. He used words.

Q: Words like - - like what kind of words did he use to force you into signing?

A: You know, you're going - - he's going to have to go back if you don't give us that - - you know, the 437. He's just going to have to go back and, you know, things like that.

Q: [Mr. Karshenas] said that he was going to take him back to jail if you didn't sign and pay; is that right?

A: Uh-huh.

Q: Is that the duress you're talking about?

A: Yes.

Ms. Vaughn also testified that "my son is not a good person, and I was - - you know, I wanted him to stay in there a while." Mr. Karshenas acknowledged that his assistant, Ms. Nolen, informed Ms. Vaughn that if she didn't pay the bond premium of $437.00 that American Bonding "had the right" to take Mr. Vaughn back to jail.

After reviewing the record, we find that the evidence does not preponderate against the trial court's finding that Ms. Vaughn failed to prove that she signed the contract under duress. Statements from American Bonding that Mr. Vaughn would be taken back to jail if Ms. Vaughn did not sign the contract did not rise to the level of intimidation or compulsion sufficient to vitiate the contract, especially considering Ms. Vaughn's testimony that she "wanted her son to stay in [jail] for a while." Moreover, even though Ms. Vaughn had a copy of the bond agreement, she did not protest the validity of the contract until American

Bonding attempted to enforce the contract. We do not find that the trial court erred in finding there was no duress and upholding the contract.

### D. Public Policy

Ms. Vaughn asks us to void the contract as a matter of public policy, based on the manner in which the contract was executed, which she characterizes as "threatening" and "coercive." She correctly notes the trial court expressed displeasure with the actions of Mr. Karshenas. While we share the court's concern, we do not believe that the conduct is so egregious as to require this court to invalidate the contract as a matter of public policy. Pursuant to the provisions of Tenn. Code Ann. § 40-11-125 *et seq.*, the trial court retains supervisory authority over the conduct of the bail bonding enterprise and those who participate in it.[3]

### E. Attorney's Fees

American Bonding contends that the trial court abused its discretion in failing to award attorney's fees pursuant to the terms of the contract. With respect to attorney's fees, the contract stated as follows:

> The Principal(s) shall pay over, reimburse, and make good to the company any and all sums and amounts of money required to meet any and every claim, demand, liability, cost, expense, suit, order, decree, adjudication, fee, payment, or legal fees (*including but not limited to a reasonable attorney's fee*) involving the company by reason of the execution of the bond(s) or undertaking(s) described m [sic] the application and any other bond or undertaking executed in behalf or at the request of the Principal(s) or any of them and before the company shall be required to pay. The liability for legal fees and disbursements includes all legal fees and disbursements that the company may pay or incur, including but not limited to a proceeding in which the company may assert or defend its right to collect or charge for any legal fees and/or disbursements incurred in that or any other proceeding.

(emphasis added).

Tennessee law allows for parties to contract for the recovery of attorney's fees as an element of damages. *See Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d

---

[3] In this regard, we note that the trial court admonished Mr. Karshenas for his behavior and cautioned him as follows: "Mr. Karshenas, don't do this. I'll revoke your ability to write bonds."

303 (Tenn. 2009). In this case, the trial court did not have discretion to fail to consider the provision of the contract awarding reasonable attorney's fees to American Bonding. *See Hosier v. Crye-Leike Commercial, Inc.*, No. M2000-01182-COA-R3-CV, 2001 WL 799740, at *6 (Tenn. Ct. App. July 17, 2001) (finding that the trial court did not have discretion to determine whether to award attorney's fees when the contract provided that the prevailing party was entitle to recover its reasonable attorney's fees). Here, the contract provided for the payment of attorney's fees in cases where "the company may assert or defend its right to collect" under the terms of the contract. While the court was justifiably concerned about the conduct of Mr. Karshenas, it lacked the discretion to modify or fail to enforce the contract. As a consequence, we reverse the trial court's decision to deny American Bonding attorney's fees and remand the case to the trial court for determination of the amount of the attorney's fee to which American Bonding is contractually entitled. The determination of the amount of reasonable attorney's fees is within the trial court's discretion. *Albright v. Mercer*, 945 S.W.2d 749 (Tenn. Ct. App. 1996); *see also* Tenn. Sup. Ct. Rule 8, Rule 1.5.

## IV. Conclusion

For the foregoing reasons, we affirm the trial court's judgment awarding American Binding $4,000.00. We reverse the denial of attorneys fees and remand the case for the trial court to determine a reasonable fee as provided in the contract.

 

 

_____
RICHARD H. DINKINS, JUDGE